■ In the Matter of ROBERT H. BURACK, Respondent-Appellant. I. BURACK, INC., Appellant-Respondent, and BURN-RITE

VALVE MFG. CORP. et al., Respondents. I. BURACK, INC., Appellant, et al., Plaintiffs, v ROBERT H. BURACK, Respondent, et al., Defendants.—In a proceeding pursuant to Business Corporation Law § 1104-a seeking a judicial dissolution of a closely held corporation, and an action, *inter alia,* to recover damages for conversion, I. Burack, Inc., appeals from (1) so much of a judgment of the Supreme Court, Westchester County (Slifkin, J.), entered September 24, 1986, as, after a nonjury trial, granted the petition in the proceeding to the extent of directing it to purchase the entire stock interest of Robert H. Burack (the petitioner in the proceeding and a defendant in the action) in the company at the fair market value thereof to be determined at a valuation hearing, and (2) so much of a judgment of the same court, also entered September 24, 1986, as dismissed its first cause of action asserted in the complaint in the civil action, and Robert H. Burack cross-appeals from so much of the judgment in the proceeding as (1) denied his demand for dissolution of I. Burack, Inc., and appointment of a receiver therefor, and (2) dismissed the petition for dissolution as against the remaining respondent corporations.

Ordered that the judgments are affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

These matters arise out of the ownership and participation in the management of certain corporations, particularly in I. Burack, Inc. (hereinafter I. Burack). This corporation, specializing in the sale of plumbing supplies, was founded by Israel Burack sometime in the 1920's. He and his wife Fanny owned all of the stock in the corporation and ran the business. They had 4 children, 3 of whom are directly involved in the instant matter: Robert H. Burack, Abraham Burack, and Dorothy Burack who married Solomon Jaffe. By the 1930's Robert H. Burack, Abraham Burack and Solomon Jaffe had all come to work at I. Burack. As the years passed, Robert H. Burack became active in sales for the corporations and was generally responsible for the operation of the business at the Yonkers office. Abraham Burack was essentially in charge of the Mt. Vernon operations which included the activities of W. A. Russell Corp. and Burn-Rite Valve Mfg. Corp. Solomon Jaffe became involved in and was responsible for the financial, legal and administrative functions of the corporations. The remaining named corporations developed over the years and became loosely affiliated with I. Burack although each corporation retained its own separate corporate identity.

In March 1956, Israel and Fanny Burack transferred all their stock in I. Burack as follows: to Abraham Burack (one

third), Robert H. Burack (one third) and to Solomon and Dorothy Jaffe (one third jointly). Israel Burack retained the title of president of the corporation until his death in 1974. No other person was subsequently elected as president of the corporation. Since its formation and up until 1977, there were no formal shareholders or director's meetings and the corporation did not declare any dividends. All decisions relating to the affairs of the business were handled informally.

In September 1964 Solomon and Dorothy Jaffe transferred their stock in the corporation (save for a fraction of one share) to their son, Bernard Jaffe, and to their daughter and son-in-law, Deanna and Robert Miller. In December 1982, Abraham Burack transferred his stock of I. Burack, to his son, Herbert D. Burack. At the time of these transfers, Robert D. Miller, Bernard R. Jaffe and Herbert D. Burack were all actually involved in the business of I. Burack as well as the related activities of the other corporations.

Information concerning the transfers of these shares of stock was withheld from Robert H. Burack until some time in 1976 or early 1977. At that time, Herbert Burack, Robert Miller and Bernard Jaffe went to Robert H. Burack's office to request a salary increase. The request was denied. Shortly thereafter, a formal notice of a meeting of the shareholders, the first in the company's history, was sent out. After several attempts, the meeting was finally held on March 3, 1977. The petitioner did not attend the shareholders' meeting, preferring to be represented thereat by his attorney. At the meeting, Robert H. Burack was not elected as a director or officer of the corporation, although he had held both positions during the preceding years. However, his employment by I. Burack was continued.

On November 12, 1979, a written notice was personally served upon Robert H. Burack terminating his employment with I. Burack. His office was padlocked and he was denied entry to prevent the removal of corporation records. He was, however, permitted to enter the premises under police supervision to remove his own personal records from the office. Since that time he has received neither a salary nor any dividends from I. Burack, or any of the affiliated corporations, with the single exception of a $7,500 dividend in 1980.

The instant proceeding was subsequently commenced and after a lengthy trial, the court determined that Robert H. Burack had been "oppress[ed]" within the meaning of Business Corporation Law § 1104-a based upon his failure to receive a financial return and to receive the financial benefits

which he had come to expect. It refused to order dissolution of I. Burack, reasoning that a valuation hearing would provide Robert H. Burack with a fair return on his investment. Finally, the court denied Robert H. Burack relief with respect to the other corporations because he had not shown that his interest in them had been "frozen out". We affirm.

Business Corporation Law § 1104-a (a) (1) permits the dissolution of a close corporation upon the petition of a minority shareholder owning 20% or more of the company's outstanding voting shares when it is established that those in control have engaged in "oppressive" actions towards him. While it has been recognized that there can be no exact definition of "oppression", it has generally been stated that a minority shareholder is oppressed when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the shareholder's decision to join the venture (see, e.g., Matter of Kemp & Beatley [Gardstein], 64 NY2d 63; Matter of Imperatore, 128 AD2d 707). Whether the expectations of the complaining shareholder are reasonable must of course be determined on a case-by-case basis.

Upon the record, it is clear that Robert H. Burack was oppressed within the meaning of the statute. He had invested his entire life's work in the company organized by his father. During this time he received a salary, bonuses in lieu of dividends, and other perquisites attached to his position including the use of gas and telephone credit cards, the use of automobiles leased by the company, and health benefits. Upon his termination, he no longer received any of the financial benefits from his stockholdings save for one dividend which was declared on the eve of the first trial of this action. In addition, his reasonable expectation of being an active participant in the company was frustrated. This has been held to constitute oppression in other similar situations (see, Matter of Kemp & Beatley [Gardstein], supra; Matter of Imperatore, supra; Matter of Gunzberg v Art-Lloyd Metal Prods. Corp., 112 AD2d 423). In so holding, we note that our decision does not hinge solely upon the failure of the company to declare dividends upon Robert H. Burack's termination. The failure to do so in and of itself would not constitute oppression under these circumstances since it was the policy of the corporation during Robert H. Burack's long tenure not to declare dividends.

I. Burack urges that Robert H. Burack's termination was

provoked by his own bad acts and thus, he should not be heard to complain. However, the doctrine of "unclean hands" is not an automatic bar to relief under Business Corporation Law § 1104-a. Only when a minority shareholder whose own acts, made in bad faith and undertaken with a view toward forcing an involuntary dissolution, give rise to the complaint of oppression should relief be barred (see, Matter of Kemp & Beatley [Gardstein], supra; Matter of Gunzberg v Art-Lloyd Metal Prods. Corp., supra). On the record before us, we cannot conclude that Robert H. Burack's actions were undertaken with this specific view in mind.

We further conclude that the trial court did not abuse its discretion in ordering a buyout of Robert H. Burack's shares in lieu of dissolution. In contrast to many of the cases in which dissolution of the closely held corporation would affect only a small number of shareholders running a relatively small enterprise, the subject corporation is a multimillion dollar enterprise, employing many people and acting as a major competitor in its field. Rather than dissolve the corporation, under these facts, a court imposed buyout appears to be an appropriate alternative remedy (see, Business Corporation Law § 1104-a [b]).

We agree with the Supreme Court that no oppression of Robert H. Burack has been established with respect to the remaining corporations since he is still an officer and director of these enterprises and the record indicates that for the most part they are run as corporations separate from the main enterprise.

Finally, we have considered the remaining issues raised by I. Burack and find that they are without merit. Mollen, P. J., Thompson, Lawrence and Eiber, JJ., concur.