OPINION OF THE COURT
 

 Chief Judge Cooke.
 

 When the majority shareholders of a close corporation award
 
 de facto
 
 dividends to all shareholders except a class of minority shareholders, such a policy may constitute “oppressive actions” and serve as a basis for an order made pursuant to section 1104-a of the Business Corporation Law dissolving the corporation. In the instant matter, there is sufficient evidence to support the lower courts’ conclusion that the majority shareholders had altered a long-standing policy to distribute corporate earnings on the basis of stock ownership, as against petitioners only. Moreover, the courts did not abuse their discretion by concluding that dissolution was the only means by which petitioners could gain a fair return on their investment.
 

 I
 

 The business concern of Kemp & Beatley, incorporated under the laws of New York, designs and manufactures table linens and sundry tabletop items. The company’s stock consists of 1,500 outstanding shares held by eight shareholders. Petitioner Dissin had been employed by the company for 42 years when, in June 1979, he resigned. Prior to resignation, Dissin served as vice-president and a director of Kemp & Beatley. Over the course of his employment, Dissin had acquired stock in the company and currently owns 200 shares.
 

 Petitioner Gardstein, like Dissin, had been a long-time employee of the company. Hired in 1944, Gardstein was for the next 35 years involved in various aspects of the business including
 
 *68
 
 material procurement, product design, and plant management. His employment was terminated by the company in December 1980. He currently owns
 
 105
 
 shares of Kemp & Beatley stock.
 

 Apparent unhappiness surrounded petitioners’ leaving the employ of the company. Of particular concern was that they no longer received any distribution of the company’s earnings. Petitioners considered themselves to be “frozen out” of the company; whereas it had been their experience when with the company to receive a distribution of the company’s earnings according to their stockholdings, in the form of either dividends or extra compensation, that distribution was no longer forthcoming.
 

 Gardstein and Dissin, together holding 20.33% of the company’s outstanding stock, commenced the instant proceeding in June 1981, seeking dissolution of Kemp & Beatley pursuant to section 1104-a of the Business Corporation Law. Their petition alleged “fraudulent and oppressive” conduct by the company’s board of directors such as to render petitioners’ stock “a virtually worthless asset.” Supreme Court referred the matter for a hearing, which was held in March 1982.
 

 Upon considering the testimony of petitioners and the principals of Kemp & Beatley, the referee concluded that “the corporate management has by its policies effectively rendered petitioners’ shares worthless, and * * * the only way petitioners can expect any return is by dissolution”. Petitioners were found to have invested capital in the company expecting, among other things, to receive dividends or “bonuses” based upon their stock holdings. Also found was the company’s “established buy-out policy” by which it would purchase the stock of employee shareholders upon their leaving its employ.
 

 The involuntary-dissolution statute (Business Corporation Law, § 1104-a) permits dissolution when a corporation’s controlling faction is found guilty of “oppressive action” toward the complaining shareholders. The referee considered oppression to arise when “those in control” of the corporation “have acted in such a manner as to defeat those expectations of the minority stockholders which formed the basis of [their] participation in the venture.” The expectations of petitioners that they would not be arbitrarily excluded from gaining a return on their investment and that their stock would be purchased by the corporation upon termination of employment, were deemed defeated by prevailing corporate policies. Dissolution was recommended in the referee’s report, subject to giving respondent corporation an opportunity to purchase petitioners’ stock.
 

 
 *69
 
 Supreme Court confirmed the referee’s report. It, too, concluded that due to the corporation’s new dividend policy petitioners had been prevented from receiving any return on their investments. Liquidation of the corporate assets was found the only means by which petitioners would receive a fair return. The court considered judicial dissolution of a corporation to be “a serious and severe remedy.” Consequently, the order of dissolution was conditioned upon the corporation’s being permitted to purchase petitioners’ stock. The Appellate Division affirmed, without opinion.
 

 At issue in this appeal is the scope of section 1104-a of the Business Corporation Law. Specifically, this court must determine whether the provision for involuntary dissolution when the “directors or those in control of the corporation have been guilty of * * * oppressive actions toward the complaining shareholders” was properly applied in the circumstances of this case. We hold that it was, and therefore affirm.
 

 II
 

 Judicially ordered dissolution of a corporation at the behest of minority interests is a remedy of relatively recent vintage in New York. Historically, this State’s courts were considered divested of equity jurisdiction to order dissolution, as statutory prescriptions were deemed exclusive (see
 
 Hitch v Hawley,
 
 132 NY 212, 217). Statutes permitting judicial dissolution of corporations either limited the types of corporations under their purview (see L 1817, ch 146, §§ 1-4; see, also,
 
 Matter of Niagara Ins. Co.,
 
 1 Paige Ch 258) or restricted the parties who could petition for dissolution to the Attorney-General, or the directors, trustees, or majority shareholders of the corporation (see
 
 Hitch v Hawley,
 
 132 NY, at pp 218-219,
 
 supra;
 
 see, generally, Business Corporation Law, §§ 1101-1104).
 

 Minority shareholders were granted standing in the absence of statutory authority to seek dissolution of corporations when controlling shareholders engaged in certain egregious conduct (see
 
 Leibert v Clapp,
 
 13 NY2d 313;
 
 Fontheim v Walker,
 
 282 App Div 373, affd no opn 306 NY 926). Predicated on the majority shareholders’ fiduciary obligation to treat all shareholders fairly and equally, to preserve corporate assets, and to fulfill their responsibilities of corporate management with “scrupulous good faith,” the courts’ equitable power can be invoked when “it appears that the directors and majority shareholders ‘have so palpably breached the fiduciary duty they owe to the minority shareholders that they are disqualified from exercising the
 
 *70
 
 exclusive discretion and the dissolution power given to them by statute.’ ”
 
 (Leibert v Clapp,
 
 13 NY2d, at p 317,
 
 supra,
 
 quoting Hoffman, New Horizons for the Close Corporation, 28 Brooklyn L Rev 1, 14.) True to the ancient principle that equity jurisdiction will not lie when there exists a remedy at law (see
 
 Brady v McCosker,
 
 1 NY 214, 217), the courts have not entertained a minority’s petition in equity when their rights and interests could be adequately protected in a legal action, such as by a shareholder’s derivative suit (see
 
 Matter of Nelkin v H.J.R. Realty Corp.,
 
 25 NY2d 543, 550; cf.
 
 Leibert v Clapp,
 
 13 NY2d, at p 317,
 
 supra).
 

 Supplementing this principle of judicially ordered equitable dissolution of a corporation, the Legislature has shown a special solicitude toward the rights of minority shareholders of closely held corporations by enacting section 1104-a of the Business Corporation Law.
 
 [1]
 
 That statute provides a mechanism for the holders of at least 20% of the outstanding shares of a corporation whose stock is not traded on a securities market to petition for its dissolution “under special circumstances” (see Business Corporation Law, § 1104-a, subd [a]). The circumstances that give rise to dissolution fall into two general classifications: mistreatment of complaining shareholders (subd [a], par [1]), or misappropriation of corporate assets (subd [a], par [2]) by controlling shareholders, directors or officers.
 

 Section 1104-a (subd [a], par [1]) describes three types of proscribed activity: “illegal”, “fraudulent”, and “oppressive”
 
 *71
 
 conduct. The first two terms are familiar words that are commonly understood at law. The last, however, does not enjoy the same certainty gained through long usage. As no definition is provided by the statute, it falls upon the courts to provide guidance (see
 
 Goncalves v Regent Int. Hotels,
 
 58 NY2d 206, 218).
 

 The statutory concept of “oppressive actions” can, perhaps, best be understood by examining the characteristics of close corporations and the Legislature’s general purpose in creating this involuntary-dissolution statute. It is widely understood that, in addition to supplying capital to a contemplated or ongoing enterprise and expecting a fair and equal return, parties comprising the ownership of a close corporation may expect to be actively involved in its management and operation (O’Neal, Close Corporations [2d ed], §§ 1.07-1.09; Davidian, Corporate Dissolution in New York: Liberalizing the Rights of Minority Shareholders, 56 St John’s L Rev 24,26; Note, Involuntary Dissolution of Close Corporations for Mistreatment of Minority Shareholders, 60 Wash U LQ 1119, 1139-1143; Ann., 56 ALR3d 358, 363-367; see, also,
 
 Matter of Topper v Park Sheraton Pharmacy,
 
 107 Misc 2d 25;
 
 Matter of Barry One Hour Photo Process,
 
 111 Misc 2d 559). The small ownership cluster seeks to “contribute their capital, skills, experience and labor” toward the corporate enterprise
 
 (Kruger v Gerth,
 
 16 NY2d 802, 805 [Desmond, Ch. J., dissenting]; see
 
 Matter of Pivot Punch & Die Corp.,
 
 15 Misc 2d 713, 715-716 [Jasen, J.]; Israels, Close Corporation and the Law, 33 Cornell LQ 488).
 

 As a leading commentator in the field has observed: “Unlike the typical shareholder in a publicly held corporation, who may be simply an investor or a speculator and cares nothing for the responsibilities of management, the shareholder in a close corporation is a co-owner of the business and wants the privileges and powers that go with ownership. His participation in that particular corporation is often his principal or sole source of income. As a matter of fact, providing employment for himself may have been the principal reason why he participated in organizing the corporation. He may or may not anticipate an ultimate profit from the sale of his interest, but he normally draws very little from the corporation as dividends. In his capacity as an officer or employee of the corporation, he looks to his salary for the principal return on his capital investment, because earnings of a close corporation, as is well known, are distributed in major part in salaries, bonuses and retirement benefits.” (O’Neal, Close Corporations [2d ed], § 1.07, atpp 21-22 [n omitted].)
 

 
 *72
 
 Shareholders enjoy flexibility in memorializing these expectations through agreements setting forth each party’s rights and obligations in corporate governance (see, generally, Kessler, Shareholder-Managed Close Corporation Under the New York Business Corporation Law, 43 Fordham L Rev 197; Davidian,
 
 op. cit., 56
 
 St John’s L Rev 24, 29-30, and nn 21-22). In,.the absence of such an agreement, however, ultimate decision-making power respecting corporate policy will be reposed in the holders of a majority interest in the corporation (see, e.g., Business Corporation Law, §§ 614, 708). A wielding of this power by any group controlling a corporation may serve to destroy a stockholder’s vital interests and expectations.
 

 As the stock of closely held corporations generally is not readily salable, a minority shareholder at odds with management policies may be without either a voice in protecting his or her interests or any reasonable means of withdrawing his or her investment. This predicament may fairly be considered the legislative concern underlying the provision at issue in this case; inclusion of the criteria that the corporation’s stock not be traded on securities markets and that the complaining shareholder be subject to oppressive actions supports this conclusion.
 

 Defining oppressive conduct as distinct from illegality in the present context has been considered in other forums. The question has been resolved by considering oppressive actions to refer to conduct that substantially defeats the “reasonable expectations” held by minority shareholders in committing their capital to the particular enterprise (see, e.g.,
 
 Mardikos v Arger,
 
 116 Misc 2d 1028;
 
 Matter of Barry One Hour Photo Process,
 
 111 Misc 2d 559,
 
 supra; Matter of Topper v Park Sheraton Pharmacy,
 
 107 Misc 2d 25,
 
 supra; Capitol Toyota v Gervin,
 
 381 So 2d 1038 [Miss];
 
 Exadaktilos v Cinnaminson Realty Co.,
 
 167 NJ Super 141,153-156, affd 173 NJ Super 559;
 
 Masinter v Webco Co.,
 
 262 SE2d 433 [West Va]; O’Neal, Oppression of Minority Shareholders, §§ 3.01-3.11; O’Neal, Close Corporations: Existing Legislation and Recommended Reform, 33 Business Lawyer 873; After-man, Statutory Protection for Oppressed Minority Shareholders: A Model for Reform, 55 Va L Rev 1043; but cf.
 
 Polikoffv Dole & Clark Bldg. Corp.,
 
 37 Ill App 2d 29, 36;
 
 Baker v Commercial Body Bldrs.,
 
 264 Ore 614, 630). This concept is consistent with the apparent purpose underlying the provision under review. A shareholder who reasonably expected that ownership in the corporation would entitle him or her to a job, a share of corporate earnings, a place in corporate management, or some other form of security, would be oppressed in a very real sense when others
 
 *73
 
 in the corporation seek to defeat those expectations and there exists no effective means of salvaging the investment.
 

 Given the nature of close corporations and the remedial purpose of the statute, this court holds that utilizing a complaining shareholder’s “reasonable expectations” as a means of identifying and measuring conduct alleged to be oppressive is appropriate. A court considering a petition alleging oppressive conduct must investigate what the majority shareholders knew, or should have known, to be the petitioner’s expectations in entering the particular enterprise. Majority conduct should not be deemed oppressive simply because the petitioner’s subjective hopes and desires in joining the venture are not fulfilled. Disappointment alone should not necessarily be equated with oppression.
 

 Rather, oppression should be deemed to arise only when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the petitioner’s decision to join the venture. It would be inappropriate, however, for us in this case to delineate the contours of the courts’ consideration in determining whether directors have been guilty of oppressive conduct. As in other areas of the law, much will depend on the circumstances in the individual case.
 

 The appropriateness of an order of dissolution is in every case vested in the sound discretion of the court considering the application (see Business Corporation Law, § 1111, subd [a]). Under the terms of this statute, courts are instructed to consider both whether “liquidation of the corporation is the only feasible means” to protect the complaining shareholder’s expectation of a fair return on his or her investment and whether dissolution “is reasonably necessary” to protect “the rights or interests of any substantial number of shareholders” not limited to those complaining (Business Corporation Law, § 1104-a, subd [b], pars [1], [2]). Implicit in this direction is that once oppressive conduct is found, consideration must be given to the totality of circumstances surrounding the current state of corporate affairs and relations to determine whether some remedy short of or other than dissolution constitutes a feasible means of satisfying both the petitioner’s expectations and the rights and interests of any other substantial group of shareholders (see, also, Business Corporation Law, § 1111, subd [b], par [1]).
 

 By invoking the statute, a petitioner has manifested his or her belief that dissolution may be the only appropriate remedy. Assuming the petitioner has set forth a prima facie case of
 
 *74
 
 oppressive conduct, it should be incumbent upon the parties seeking to forestall dissolution to demonstrate to the court the existence of an adequate, alternative remedy (cf.
 
 Baker v Commercial Body Bldrs.,
 
 264 Ore 614,
 
 supra; White v Perkins,
 
 213 Va 129). A court has broad latitude in fashioning alternative relief, but when fulfillment of the oppressed petitioner’s expectations by these means is doubtful, such as when there has been a complete deterioration of relations between the parties, a court should not hesitate to order dissolution. Every order, of dissolution, however, must be conditioned upon permitting any shareholder of the corporation to elect to purchase the complaining shareholder’s stock at fair value (see Business Corporation Law, § 1118).
 

 One further observation is in order. The purpose of this involuntary dissolution statute is to provide protection to the minority shareholder whose reasonable expectations in undertaking the venture have been frustrated and who has no adequate means of recovering his or her investment. It would be contrary to this remedial purpose to permit its use by minority shareholders as merely a coercive tool (see Davidian,
 
 op. cit.,
 
 56 St John’s L Rev 24, 59-60, and nn 159-160). Therefore, the minority shareholder whose own acts, made in bad faith and undertaken with a view toward forcing an involuntary dissolution, give rise to the complained-of oppression should be given no quarter in the statutory protection (cf.
 
 Mardikos v Arger,
 
 116 Misc 2d 1028, 1032,
 
 supra).
 

 Ill
 

 There was sufficient evidence presented at the hearing to support the conclusion that Kemp & Beatley had a long-standing policy of awarding
 
 de facto
 
 dividends based on stock ownership in the form of “extra compensation bonuses.” Petitioners, both of whom had extensive experience in the management of the company, testified to this effect. Moreover, both related that receipt of this compensation, whether as true dividends or disguised as “extra compensation”, was a known incident to ownership of the company’s stock understood by all of the company’s principals. Finally, there was uncontroverted proof that this policy was changed either shortly before or shortly after petitioners’ employment ended. Extra compensation was still awarded by the company. The only difference was that stock ownership was no longer a basis for the payments; it was asserted that the basis became services rendered to the corporation. It was not unreasonable for the fact finder to have determined that this change in policy amounted to nothing less them
 
 *75
 
 an attempt to exclude petitioners from gaining any return on their investment through the mere recharacterization of distributions of corporate income. Under the circumstances of this case, there was no error in determining that this conduct constituted oppressive action within the meaning of section 1104-a of the Business Corporation Law.
 
 [2]
 

 Nor may it be said that Supreme Court abused its discretion in ordering Kemp & Beatley’s dissolution, subject to an opportunity for a buy-out of petitioners’ shares. After the referee had found that the controlling faction of the company was, in effect, attempting to “squeeze-out” petitioners by offering them no return on their investment and increasing other executive compensation, respondents, in opposing the report’s confirmation, attempted only to controvert the factual basis of the report. They suggested no feasible, alternative remedy to the forced dissolution. In light of an apparent deterioration in relations between petitioners and the governing shareholders of Kemp & Beatley, it was not unreasonable for the court to have determined that a forced buy-out of petitioners’ shares or liquidation of the corporation’s assets was the only means by which petitioners could be guaranteed a fair return on their investments.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to petitioners-respondents, by affirming the substantive determination of that court but extending the time for exercising the option to purchase petitioners-respondents’ shares to 30 days following this court’s determination.
 

 Judges Jasen, Jones, Wachtler, Meyer and Simons concur; Judge Kaye taking no part.
 

 Order modified, with costs to petitioners-respondents, in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . The statute provides:
 

 “§ 1104-a. Petition for judicial dissolution under special circumstances
 

 “(a) The holders of twenty percent or more of all outstanding shares of a corporation, other than a corporation registered as an investment company under an act of congress entitled ‘Investment Company Act of 1940’, no shares of which are listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, who are entitled to vote in an election of directors may present a petition of dissolution on one or more of the following grounds:
 

 “(1) The directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders;
 

 “(2) The property or assets of the corporation are being looted, wasted, or diverted for non-corporate purposes by its directors, officers or those in control of the corporation.
 

 “(b) The court, in determining whether to proceed with involuntary dissolution pursuant to this section, shall take into account:
 

 “(1) Whether liquidation of the corporation is the only feasible means whereby the petitioners may reasonably expect to obtain a fair return on their investment; and
 

 “(2) Whether liquidation of the corporation is reasonably necessary for the protection of the rights and interests of any substantial number of shareholders or of the petitioners.”
 

 [2]
 

 . Respondent is correct in arguing that there is no basis in the record for the referee’s conclusion that the corporation had an established policy to buyout the shares of employees when they left the company. Although the record reflects that petitioners intended to offer proof on this issue, the referee erroneously concluded that the issue was beyond the scope of the reference. He considered such evidence only as “background.” In light of this limitation of the issues under consideration, which neither side objected to, the referee could not then properly ground his decision on a failure by respondent to abide by any buy-out policy. The referee’s reliance on this ground is irrelevant for the purposes of this appeal, however, as Supreme Court’s confirmation of the report was based solely on the principal ground for the finding of oppression, the company’s failure to award dividends.