■ In the Matter of the Dissolution of FUNPLEX, INC. HARVEY W. GORDON et al., Appellants; J. FELIX STREVELL et al., Respondents. [677 NYS2d 226] —Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Conway, J.H.O.), entered June 13, 1997 in Albany County, which, in a proceeding pursuant to Business Corporation Law article 11, *inter alia*, determined the fair market value of petitioners' stock.

At issue is the fair market value of petitioners' 49% interest in Funplex, Inc., a closely held corporation formed by petitioners and respondents to construct and operate a seasonal outdoor recreational facility in the Town of East Greenbush, Rensselaer County. The complex, which included a miniature golf course, batting cages and a "Bank Shot Basketball" game, opened in mid-August 1992, taking in approximately $103,000 in gross revenue prior to closing for the season at the end of October. Due to substantial cost overruns that had been incurred in constructing the facilities, however, the corporation was having difficulty meeting its obligations, including payments to contractors and debt service, during the upcoming winter.

When the parties were unable to agree on how to remedy this shortfall, petitioners brought this proceeding to dissolve the corporation pursuant to Business Corporation Law § 1104-a. Respondents having thereafter elected to purchase petitioners' interest in Funplex (*see*, Business Corporation Law § 1118), a bench trial was held to determine the fair market value of the shares (*see generally, Matter of Seagroatt Floral Co. [Riccardi]*, 78 NY2d 439, 444-445; *Matter of Walt's Submarine Sandwiches [Basile]*, 173 AD2d 980, *lv denied* 78 NY2d 860). Supreme Court concluded that petitioners' 49% interest in the business was worth $17,150, and this appeal by petitioners followed.

Although the experts disagreed sharply with respect to many of the pertinent facts and assumptions, and consequently arrived at vastly disparate estimates of the value of the corporation, the projections and analysis adopted by Supreme Court—those of respondents' expert, John Johnson—were, for the most part, adequately explained by Johnson and consistent with the limited financial history of the business. Affording due deference to Supreme Court's resolution of credibility issues raised by the conflicting testimony (*see, Matter of Adirondack Hydro Dev. Corp.*, 205 AD2d 925, 926; *Matter of Wind v First Rockaway Coast Corp.*, 190 AD2d 811, *lv denied* 82 NY2d 651), we are not persuaded by petitioners' argument that Johnson's "discounted cash flow" methodology, or the projections to which he applied that methodology, are critically flawed such that his valuation must be rejected entirely.

The record does, however, reveal an error in Johnson's use of a "capital deficiency" adjustment; Supreme Court's failure to recognize and correct this error has produced a valuation that is against the weight of the evidence (*see, Jacobs v Facilities Dev. Corp.*, 118 AD2d 971, 973, *lv denied* 68 NY2d 603). We find no fault with the use of such an adjustment, per se, for while petitioner's expert reached a different conclusion, there is ample record support for Johnson's findings that Funplex will experience a negative cash flow in the first year for which projections were made, and that an influx of cash, either in the form of capital or debt, will be necessary to enable it to continue operating during that period. Hence, it was not improper to consider the amount of capital that a purchaser would have to immediately contribute to the business in arriving at the price he or she would likely pay for it. Nevertheless, having done so, Johnson neglected to consider the effect which this presumed contribution would have on the corporation's cash flow in the first year, without providing any convincing explanation for this omission.

If, as Johnson opined, a purchaser would need to contribute $73,801 to the business in the first year to remedy a deficit reflected in the company's balance sheet and provide necessary working capital, those funds must be included when determining the cash flow for the year, changing it from a negative $49,224 to a positive $24,577. Thus, by paying the purchase price (as discounted for the $73,801 "capital deficiency"), as well as contributing that amount of capital, the purchaser would obtain a business that will actually produce discounted cash flows over the first six years of $106,942, not the $41,454

Johnson projected.[1] This results in a total "discounted cash flow" value of $186,552;[2] subtracting the amount to be contributed as capital ($73,801), and applying what Johnson concluded was an appropriate marketability discount of 25% (*see, Matter of Seagroatt Floral Co. [Riccardi], supra*, at 446), yields a final value of $84,563[3] for the entire corporation, and $41,436 for petitioners' 49% interest therein. The judgment must be modified accordingly.

The remainder of petitioners' arguments, including their assertion that Supreme Court, having adopted respondents' comprehensive proposed findings and conclusions in their entirety, without explication, failed to adequately spell out the basis for its determination (*cf., Matter of Niagara Mohawk Power Corp. [Peryea]*, 114 AD2d 542, 543), have been considered and found wanting.

Mikoll, J. P., Mercure, Crew III and White, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by adjusting the first decretal paragraph to reflect a payment amount of $41,436 plus interest from March 2, 1993; matter remitted to the Supreme Court for a hearing on the issue of payment terms, if necessary; and, as so modified, affirmed.

---

1. Johnson predicted cash flows, in the first six years, of $-$49,224, $17,253, $28,391, $49,323, $47,943, and $73,488; discounting these figures, using his discount factors, yields figures of $-$43,679, $12,055, $15,620, $21,367, $16,353, and $19,738, which sum to $41,454. The corrected cash flow for the first year ($-$49,224 $+$ $73,801 = $24,577), when multiplied by the discount factor of 0.887357, yields a new, discounted first year cash flow of $21,809. Adding this amount to the discounted cash flows for the second through sixth years yields a total of $106,942.

2. This represents the sum of the discounted cash flows for the first six years, as corrected ($106,942), plus the discounted terminal value of $79,610.

