In the Matter of the Dissolution of QUAIL AERO SERVICE, INC. SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, as Assignee of JEFFREY C. COHEN, as Trustee of the Estate of ALBERT W. LAWRENCE, Appellant; QUAIL AERO SERVICE, INC., Respondent. [755 NYS2d 103] —Peters, J. Appeal from an order of the Supreme Court (Reilly, Jr., J.), entered September 29, 2001 in Schenectady County, which, inter alia, dismissed petitioner's application, in a proceeding pursuant to Business Corporation Law article 11, to direct the judicial dissolution of respondent.

Respondent is a closely held corporation with its outstanding shares of common stock equally owned by Lewis Golub, Robert Higgins and Albert Lawrence. Its sole corporate purpose was not to make a profit, but to own, operate and make available for use by its shareholders its principal asset, a 1983 Beechcraft King Air B200 airplane. To purchase this asset, the three shareholders borrowed $1,121,000 from Chase Manhattan Bank (hereinafter Chase), in their individual capacities, pledging the plane as collateral; respondent guaranteed this loan and was therefore secondarily liable.

Pursuant to a verbal shareholders' agreement, each would pay a minimum amount of flight time per year to cover the costs of maintaining and operating the airplane; these payments were respondent's only source of revenue. They also agreed that any additional operating expenses, as well as any liability on the Chase loan, would be paid for equally. In accordance with this agreement, all shareholders paid one third of the amount due on the Chase loan, along with the minimum usage requirement, until January 1997, one month prior to Lawrence's filing for bankruptcy under chapter 11 of the Bankruptcy Code (11 USC). Such filing resulted in the appointment of Jeffrey Cohen as trustee of the bankruptcy estate (hereinafter trustee) who thereby became the owner of Lawrence's shares of respondent's stock. Thereafter, to avoid foreclosure on the airplane, Golub and Higgins paid all of Lawrence's monthly payments; the bankruptcy estate failed to make any payments on behalf of Lawrence.

On March 9, 2000, the trustee received an offer from Equinox Air L.L.C. to purchase his share of respondent's stock. On the same day, Golub and Higgins called a shareholders meeting

during which they adopted a resolution authorizing respondent to obtain a new loan to satisfy the balance of the Chase loan. The refinancing contemplated by the Board of Directors, through Golub and Higgins with the trustee objecting, was pursued on the theory that refinancing was necessary to prevent default and foreclosure and to ensure that respondent's balance sheet more accurately reflected its actual assets and liabilities.

On March 13, 2000, the trustee made a motion in the bankruptcy proceeding to have the sale of his shares approved. On the same day, Golub and Higgins noticed another shareholders meeting to consider having respondent execute notes payable to themselves as reimbursement for the moneys paid on behalf of Lawrence. On March 16, 2000, the trustee successfully acquired a temporary restraining order from the Bankruptcy Court to enjoin the shareholders meeting by contending, inter alia, that respondent's increased debt would destroy the outstanding offer to purchase respondent's stock. Respondent, Golub and Higgins consented to a continuation of the temporary restraining order until a hearing set for April 6, 2000. At the same time, Golub and Higgins filed an administrative expense claim in the bankruptcy proceeding seeking to recover, as costs of preserving the estate, certain funds that they advanced to respondent on Lawrence's behalf. Prior to the decision on the administrative expense claim, respondent, Golub and Higgins withdrew their voluntary consent to a continuation of any restraint preventing respondent and its Board of Directors from taking corporate action. On December 13, 2000, the Bankruptcy Court denied the administrative expense claim.

By order dated January 17, 2001, Bankruptcy Court permitted Equinox to withdraw its offer of purchase. On January 18, 2001, after the expiration of the March 16, 2000 temporary restraining order and just prior to the expiration of a second restraining order, the trustee filed an unsuccessful motion to extend the injunction to prevent the issuance of corporate promissory notes to Golub and Higgins. Golub and Higgins then convened a shareholders meeting of respondent on January 26, 2001 which authorized the issuance of promissory notes to themselves, which were to be satisfied by the issuance of additional shares of common stock. It further authorized the offer of an option to the trustee to repay the notes on the shareholder loans, thereby extinguishing Golub's and Higgins's equity conversion rights.

Based on these actions, the trustee commenced this proceeding to bring about a corporate dissolution of respondent.

Supreme Court, by order dated September 29, 2001, dismissed the petition. Following Supreme Court's decision, petitioner, the Superintendent of Insurance, as liquidator of the United Community Insurance Company (an insolvent corporation owned by Lawrence), bought the trustee's 10 shares of respondent's stock and the right to prosecute the current appeal. Petitioner now appeals the dismissal of the trustee's petition.*

It is well settled that a court, in its discretion (*see Matter of Kemp & Beatley [Gardstein]*, 64 NY2d 63, 73), may dissolve a corporation upon a showing by 20% or more of all outstanding shares that the "directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders" (Business Corporation Law § 1104-a [a] [1]). While the terms "illegal" and "fraudulent" are given their customary and ordinary meanings (*see Matter of Kemp & Beatley [Gardstein]*, *supra* at 70-71), oppressive conduct will be found to fall within the confines of this statute "only when the majority['s] conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and * * * central to the petitioner's decision to join the venture" (*id.* at 73; *Matter of Upstate Med. Assoc.*, 292 AD2d 732, 733); mere disappointments and unfulfilled hopes and desires are insufficient (*see Matter of Kemp & Beatley [Gardstein]*, *supra* at 73). Moreover, dilution of the value of the minority shareholder's stock will not amount to oppressive conduct when the minority shareholder is given an opportunity to supply capital and thereby maintain its percentage interest in the corporation (*see DiPace v Figueroa*, 223 AD2d 949, 952). Aside from the statutory ground for dissolution, there exists a common-law right to dissolution where management breaches its fiduciary duty to its shareholders (*see Leibert v Clapp*, 13 NY2d 313, 315-317; *Lewis v Jones*, 107 AD2d 931, 932). Yet, the conduct must be deemed "egregious" (*see Matter of Kemp & Beatley [Gardstein]*, *supra* at 69-70).

Addressing first petitioner's contention that the refinancing of the Chase loan was improper because primary responsibility for the loan was shifted from the shareholders individually to respondent, we find the issue not properly preserved for our

---

* Petitioner, as an assignee of the trustee's claim, stands in the shoes of the debtor/bankrupt, here Lawrence, with the same rights and remedies (*see Hirsch v Arthur Andersen & Co.*, 72 F3d 1085, 1093; *Matter of International Ribbon Mills [Arjan Ribbons]*, 36 NY2d 121, 126; *Siegel v State of New York*, 262 App Div 388, 391-392).

review (*see Henness v Hunt*, 272 AD2d 756, 757). Had we reached the merits, we would not have concluded that the actions by Golub and Higgins amounted to illegal, fraudulent or oppressive activity. With Lawrence, and then the trustee, failing to pay the obligation on the Chase loan for approximately three years, the burden was placed upon respondent's remaining shareholders, Golub and Higgins, to prevent foreclosure on its only asset. Refinancing now placed the liability for such asset directly on respondent who was the owner of the plane; it did not frustrate any shareholders' objective expectations since respondent's sole purpose was to enable the shared use of such plane through shared costs.

Nor do we find error in Supreme Court's conclusion that the execution of the corporate notes which reimbursed Golub and Higgins for Lawrence's share of expenses did not warrant a dissolution under the statute. Both the loans booked by respondent and the ability to cancel such debts through the issuance of additional stock were legally permissible acts under the Business Corporation Law (*see* Business Corporation Law § 202 [a] [7]; § 504 [a]). As to the claim that respondent attempted to frustrate the Equinox sale, we find a lack of sufficient evidence challenging respondent's well documented explanations supporting the stated amounts owed. With the conduct of the majority shareholders further failing to evince a palpable breach of their fiduciary duties to the remaining shareholder, there existed no common-law right to dissolution.

Finally, we can find no error in Supreme Court's failure to hold an evidentiary hearing. With the record bereft of any request for a hearing or even a disputed issue of fact determinative to the dissolution application (*see Matter of Cassata v Brewster-Allen-Wichert, Inc.*, 248 AD2d 710, 711-712; *Matter of Kaufmann*, 225 AD2d 775, 776; *Matter of Gordon & Weiss [Weiss—Gordon]*, 32 AD2d 279, 280), the issue was not only unpreserved (*see Henness v Hunt, supra* at 757), but also without merit.

Cardona, P.J., Mercure, Spain and Rose, JJ., concur. Ordered that the order is affirmed, without costs.