*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 12, 2017                522587
_____

In the Matter of the
    Dissolution of GOULD
    ERECTORS & RIGGING, INC.
    and FLACH CRANE & RIGGING
    CO., INC.

HANK DIGESER,                              MEMORANDUM AND ORDER
                    Respondent;

JOHN C. FLACH et al.,
                    Appellants.
_____

Calendar Date:  November 17, 2016

Before:  Peters, P.J., Garry, Devine, Mulvey and Aarons, JJ.

_____


        The Baynes Law Firm, PLLC, Ravena (Brendan F. Baynes of counsel), for appellants.

        The Harding Law Firm, Niskayuna (Charles R. Harding of counsel), for respondent.

_____


Mulvey, J.

        Appeal from an order of the Supreme Court (Platkin, J.), entered November 16, 2015 in Albany County, which, among other things, granted petitioner's application, in a proceeding pursuant to Business Corporation Law article 11, to direct the judicial dissolution of Gould Erectors & Rigging, Inc. and Flach Crane & Rigging Co., Inc.

        Petitioner, a shareholder of respondent Gould Erectors & Rigging, Inc. (hereinafter GER) and respondent Flach Crane &

Rigging Co., Inc. (hereinafter FCR), commenced this special proceeding in April 2013 seeking judicial dissolution of GER and FCR.  Following a nonjury trial, Supreme Court determined that petitioner had established grounds for dissolution of both corporations under Business Corporation Law § 1104-a (a) (1), finding that respondent John C. Flach engaged in oppressive actions toward petitioner.  Respondents appeal, and we affirm.

"Business Corporation Law § 1104-a provides for relief to shareholders of a close corporation when the directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders" (Matter of Upstate Med. Assoc., 292 AD2d 732, 733 [2002] [internal quotation marks and citation omitted]). "Although the term 'oppressive actions' is not statutorily defined, the Court of Appeals has held that 'oppression should be deemed to arise . . . when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the [shareholder's] decision to join the venture'" (id. at 733, quoting Matter of Kemp & Beatley [Gardstein], 64 NY2d 63, 73 [1984]).  "Our review of Supreme Court's determination . . . 'is not limited to whether [its] findings were supported by credible evidence; rather, if it appears that a finding different from that of Supreme Court is not unreasonable, we must weigh the probative force of the conflicting evidence and the relative strength of conflicting inferences that may be drawn, and grant judgment as warranted'" (Matter of Sunburst Assoc., Inc., 106 AD3d 1224, 1225 [2013], quoting Hunt v Hunt, 222 AD2d 759, 761 [1995]).  However, appropriate deference is given to the credibility determinations and factual findings of the trial court (see St. Lawrence Factory Stores v Ogdensburg Bridge & Port Auth., 121 AD3d 1226, 1227 [2014], lv denied 25 NY3d 907 [2015]; Matter of Sunburst Assoc. Inc., 106 AD3d at 1225).

Petitioner is the owner of 24 of 98 issued shares of GER and 25 of 100 shares of FCR.[1]  Until shortly before commencement

_____

[1]  Although respondents highlight discrepancies in the corporate records and testimony regarding the dates of stock

of this proceeding, petitioner served as vice-president of both corporations while Flach was, and remains, president of both. Petitioner, Flach and their respective fathers have all served as directors of the corporations. As Supreme Court properly found, petitioner began his employment as a project engineer and vice-president with GER in 1988 or 1989 and was issued stock two different times, once before the commencement of his employment and the other time during his employment. He also received shares of stock in FCR at or about the time he started his employment with GER. Over the course of the next 24 years, the business grew significantly, with petitioner and Flach sharing responsibilities for the management of both corporations and receiving equal compensation. The trial testimony clearly established that FCR was created merely as a liability shield for GER and that the shareholders, officers and directors treated both corporations as one integrated economic unit, sharing office space and employees. Revenues, expenses and tax liabilities — as between the two corporations — were manipulated for optimum advantage by mutual agreement of the officers, directors and shareholders. Since neither GER nor FCR ever declared dividends, the shareholders' return on their active management was in the form of salary and annual bonuses.

After a deterioration in the relationship between these individuals in late 2012, petitioner was terminated as a director of both GER and FCR and was notified by Flach that his employment with GER would be terminated upon completion of an important project. At some point between December 2012 and May 1, 2013, petitioner was removed from the board of directors and dismissed as corporate secretary, and, during that period, he was denied access to his work computer and email, restricted in his interactions with GER's customers and employees and excluded from staff meetings. The project was completed in April 2013, and petitioner was terminated on May 1, 2013. His children, along with other employees deemed loyal to petitioner, were also dismissed. Finally, petitioner was not paid the customary annual profit-sharing bonus, although a bonus was paid to Flach.

---

issuance, we accord deference to Supreme Court's credibility determinations (see Hunt v Hunt, 222 AD2d at 761).

Respondents contend that the actions taken against petitioner were a justified response to his wrongful behavior, specifically, back-dating corporate documents, "unjustly leverag[ing]" his role as owner/landlord of the real property upon which the corporate facilities were located, transferring GER assets to his son at a loss to GER, and other transactions that Supreme Court appropriately described as "belated and unsubstantiated grievance[s]." We agree with Supreme Court that petitioner's actions with regard to the leasehold relationship came at a time when the parties were discussing severance of their business relationship and can reasonably be viewed as a response to respondents' oppressive conduct and not evidence of bad faith on the part of petitioner. With regard to the other transactions benefitting family members, Supreme Court properly observed that Flach also engaged in similar transactions where personal interests were advanced at the expense of GER.

On our review of the record, we confirm that the weight of the evidence supports the finding that petitioner's reasonable expectations at the time of his acquisition of stock in both corporations was long-term employment, a role in corporate management and compensation in the form of profit-sharing, and that Flach's actions defeated those expectations (see Matter of Kemp & Beatley [Gardstein], 64 NY2d at 72-73). Accordingly, we find that the record amply supports Supreme Court's determinations and, therefore, reject respondents' contentions that the court's findings were against the weight of the evidence. Finally, we discern no basis to disturb Supreme Court's finding that Flach's oppressive acts defeated petitioner's reasonable expectations that were central to his involvement with FCR as well, given the close overlap of the two corporations and that the shareholders, officers and directors treated both corporations as one integrated economic unit. There can be no question that the freezing out of petitioner from GER had the same effect on his interest in FCR.

Peters, P.J., Garry, Devine and Aarons, JJ., concur.

ORDERED that the order is affirmed, with costs.



ENTER:

Robert D. Mayberger
Clerk of the Court