■ In the Matter of the Dissolution of TWIN BAY VILLAGE, INC. VLADIMIR CHOMIAK et al., Respondents; TATIANA CHOMIAK KASIAN, Also Known as TANYA CHOMIAK KASIAN, et al., Appellants. [60 NYS3d 560]—

Rose, J. Appeal from an order of the Supreme Court (Muller, J.), entered March 16, 2016 in Warren County, which, among other things, granted petitioners' application, in a proceeding

---

pursuant to Business Corporation Law article 11, to direct the judicial dissolution of Twin Bay Village, Inc.

In 1957, the Chomiak family began operating Twin Bay Village, a seasonal summer resort on the shores of Lake George. In 1970, the family formed Twin Bay Village, Inc., a closely-held corporation, for the purpose of operating the resort. At its inception, 100 shares of corporate stock were issued, and those shares were split among Stephan Chomiak and Eleonora Chomiak and their two sons, Leo Chomiak and petitioner Vladimir Chomiak. Over the ensuing years, the division of the corporate shares changed and, by 2004, Valdimir Chomiak's son and daughter, petitioners Leon Chomiak and Leonora Chomiak, were the beneficial owners of a combined 48 shares, and Leo Chomiak and his two daughters, respondents Tatiana Chomiak Kasian and Tamara Chomiak, owned the remaining 52 shares.* In addition to these changes in ownership, the level of involvement of petitioners in operating the resort and managing the corporation changed over the years. Although petitioners were initially involved in helping to run the resort in the 1980s, their involvement thereafter declined, leaving the responsibility for operating the resort and managing the corporation entirely to respondents. In 2009, after years of running the corporation without petitioners' involvement, respondents attempted to force petitioners to sell their shares back to the corporation. After petitioners refused, they commenced this proceeding pursuant to Business Corporation Law § 1104-a seeking judicial dissolution of the corporation.

Petitioners alleged, as is pertinent here, that respondents, as the majority shareholders, continuously breached their fiduciary duties owed to petitioners by engaging in oppressive conduct aimed at "freez[ing]" petitioners out of the corporation, as well as looting, wasting and/or diverting corporate assets for noncorporate purposes. Respondents answered and asserted, among other affirmative defenses, that petitioners lacked standing and that the proceeding is time-barred. Supreme Court determined that petitioners collectively held the requisite 20% of all outstanding corporate shares to maintain this proceeding, and then appointed a referee to conduct a hearing as to the merits. Following extensive testimony and the submission of voluminous records, the referee found, among

---

* Leo Chomiak died before this proceeding was commenced and, because of this, the representative of his estate is a named respondent in this proceeding. However, because Leo Chomiak was actively involved in the corporation during the relevant time periods, all references to "respondents" will also include Leo Chomiak.

other things, that respondents engaged in oppressive conduct towards petitioners and looted corporate assets such that dissolution of the corporation was warranted. Supreme Court confirmed the referee's report, and respondents now appeal.

Initially, we agree with respondents that Supreme Court erred in finding that Leon Chomiak and Leonora Chomiak have standing to maintain this proceeding. Business Corporation Law § 1104-a (a) provides that "[t]he holders of shares representing [20%] or more of the votes of all outstanding shares of a corporation . . . *entitled to vote* in an election of directors may present a petition of dissolution" on the basis of, among other things, oppressive action or corporate looting (Business Corporation Law § 1104-a [a] [1], [2] [emphasis added]; *see generally Matter of Bernfeld*, 86 AD3d 244, 253-254 [2011]). Here, although the record indicates that respondents have historically treated Leon Chomiak and Leonora Chomiak as shareholders with the right to vote, the certificates of stock and documentary evidence in the record reflect that Leon Chomiak's 24 shares and Leonora Chomiak's 24 shares are held by Vladimir Chomiak as custodian and trustee for them. Thus, Leon Chomiak and Leonora Chomiak are beneficial owners of the 48 combined shares and are not the shareholders of record. Inasmuch as beneficial owners of corporate shares "have no right to vote if they are not record holders" (*Matter of Stewart Becker, Ltd. v Horowitz*, 94 Misc 2d 766, 771 [Sup Ct, Suffolk County 1978, Lazer, J.]; *see Matter of D. J. Salvator, Inc. [Klages]*, 268 App Div 919, 919 [1944]; *compare* Business Corporation Law § 626 [a]), we find that they lack standing pursuant to Business Corporation Law § 1104-a. We agree with Supreme Court, however, that Vladimir Chomiak has the requisite standing inasmuch as he has the power to vote the 48 shares held by him in his capacity as custodian and trustee, and those 48 shares represent more than 20% of all of the outstanding shares (*see* Business Corporation Law § 1104-a [a]). Contrary to respondents' contention, the fact that Vladimir Chomiak may have been confused as to whether he was a named petitioner in this proceeding is not dispositive regarding his standing.

Next, we are unpersuaded by respondents' contention that this proceeding is time-barred. It is well settled that " 'New York law does not provide a single statute of limitations for breach of fiduciary duty claims [and] the choice of the applicable limitations period depends on the substantive remedy that the [petitioner] seeks' " (*Matter of Therm, Inc.*, 132 AD3d 1137, 1138 [2015], quoting *IDT Corp. v Morgan Stanley Dean*

*Witter & Co.*, 12 NY3d 132, 139 [2009]). Here, the gravamen of the petition is that respondents, as the majority shareholders, breached their fiduciary duties owed to petitioners, as the minority shareholders. Although the petition alleges fraudulent acts in the form of looting, the allegation of fraud is not essential to the breach of fiduciary duty claim. In light of this, and the fact that the remedy of a judicial dissolution is equitable in nature, we find that "the six-year limitations period of CPLR 213 (1) applies" (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d at 139; *see generally Torrance Constr., Inc. v Jaques*, 127 AD3d 1261, 1265-1266 [2015]), and it does not commence "until there has been an open repudiation by the fiduciary or the relationship has otherwise been clearly terminated" (*Matter of Therm, Inc.*, 132 AD3d at 1138; *see New York State Workers' Compensation Bd. v Consolidated Risk Servs., Inc.*, 125 AD3d 1250, 1252-1253 [2015]; *Matter of Baird*, 58 AD3d 958, 959 [2009]). In our view, respondents' attempt in 2009 to force petitioners to sell their shares is the earliest point at which respondents can be said to have openly repudiated the fiduciary relationship. Given that this proceeding was commenced within six years of the 2009 force-out attempt, we agree with Supreme Court that this proceeding is not time-barred.

Turning to the merits, respondents contend that Supreme Court erred in determining that they engaged in oppressive actions toward petitioners and that they looted corporate assets. We cannot agree. Preliminarily, "[o]ur review of Supreme Court's determination . . . is not limited to whether [its] findings were supported by credible evidence; rather, if it appears that a finding different from that of Supreme Court is not unreasonable, we must weigh the probative force of the conflicting evidence and the relative strength of conflicting inferences that may be drawn, and grant judgment as warranted" (*Matter of Sunburst Assoc., Inc.*, 106 AD3d 1224, 1225 [2013] [internal quotation marks and citation omitted]; *accord Matter of Gould Erectors & Rigging, Inc.*, 146 AD3d 1128, 1129 [2017]; *see Matter of Wenger v L.A. Wenger Contr. Co., Inc.*, 114 AD3d 694, 695 [2014]). Upon our review, however, we accord due deference to the credibility determinations and factual findings of the trier of fact (*see Matter of Gould Erectors & Rigging, Inc.*, 146 AD3d at 1129; *Matter of Funplex, Inc.*, 252 AD2d 923, 924 [1998]; *see also S. Nicolia & Sons Realty Corp. v A.J.A. Concrete Ready Mix, Inc.*, 137 AD3d 994, 995 [2016]).

Business Corporation Law § 1104-a permits a court to dissolve a closely-held corporation where, as is relevant here,

those in control of the corporation have engaged in "oppressive actions toward the complaining shareholders" or have "looted, wasted, or diverted" corporate assets for noncorporate purposes (Business Corporation Law § 1104-a [a] [1], [2]; *see Matter of Penepent Corp.*, 96 NY2d 186, 191 [2001]; *Matter of Clever Innovations, Inc. [Dooley]*, 94 AD3d 1174, 1176 [2012]; *Matter of Quail Aero Serv.*, 300 AD2d 800, 802 [2002]). "Although the term 'oppressive actions' is not statutorily defined, the Court of Appeals has held that 'oppression should be deemed to arise . . . when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the petitioner[s'] decision to join the venture' " (*Matter of Upstate Med. Assoc.*, 292 AD2d 732, 733 [2002], quoting *Matter of Kemp & Beatley [Gardstein]*, 64 NY2d 63, 73 [1984]; *accord Matter of Gould Erectors & Rigging, Inc.*, 146 AD3d at 1129). Contrary to respondents' contention, this standard is equally applicable to passive shareholders, such as petitioners, inasmuch as the standard is not focused on the complaining shareholders' level of involvement with the corporation but, rather, their reasonable expectations and whether those expectations were defeated (*see Matter of Kemp & Beatley [Gardstein]*, 64 NY2d at 72-73; *Matter of Parveen*, 259 AD2d 389, 391 [1999]).

Turning first to the allegations of oppressive conduct, Supreme Court found that petitioners reasonably expected respondents to fulfill their fiduciary obligations to the minority shareholders and to equally protect the interests of all of the shareholders, and that respondents' conduct in 2001, 2004 and 2009 substantially defeated those expectations. In this regard, at the 2001 annual shareholders' meeting—of which respondents failed to notify petitioners—respondents passed a resolution awarding themselves a total of $80,000 in bonuses to be paid on a yearly basis. The bonuses were not contingent on respondents' performance or the corporation's ability to make such payments and were awarded despite the fact that the corporation had not paid dividends to shareholders since 1995. Significantly, because of the financial instability of the corporation, the bonuses were never paid to respondents but, instead, became debts owed by the corporation such that, if the corporation was sold, respondents would receive what they were owed in unpaid bonuses before petitioners received any money in the form of equity.

In addition to this incident, at the 2004 annual shareholders' meeting, respondents voted to issue an additional 100 shares of corporate stock for the price of $3,000 per share, and then

divided those shares up among themselves without affording petitioners an opportunity to purchase any of the additional shares. Although Kasian testified that certain payments were deposited into the corporation's bank account for the purchase of the shares, a review of the record supports Supreme Court's finding that respondents failed to pay the corporation for the additional shares. Moreover, the record also demonstrates that the $3,000 per share. value was a significant undervaluation when compared to the fair market value of the corporation and that the issuance of the new shares had the intended effect of diluting the value of petitioners' ownership interest.

Respondents' efforts to dilute petitioners' ownership interest in the corporation continued after 2004 and ultimately culminated with the 2009 force-out attempt. At the 2009 annual meeting—which petitioners did not attend—respondents amended the corporation's bylaws to provide that a shareholder who ceased to be actively involved with the corporation, as determined by a majority of the shareholders, could be forced to sell his or her shares. The amended bylaws provided that such a determination is "final, conclusive and binding upon all parties." After the meeting, petitioners were notified that it was unanimously determined that they had ceased to be actively involved with the corporation and, therefore, they were required to sell their shares back to the corporation for a "fair value" of $1,139 per share. Notably, Supreme Court found that this price was "considerably less" than the fair market value and that when Leo Chomiak ceased to be actively involved in the corporation after the 2009 summer season, the amended bylaws were not invoked against him. Although a contrary finding would not have been unreasonable, after we weigh the probative force of the conflicting evidence and give appropriate deference to the factual findings and credibility determinations (see Matter of Sunburst Assoc., Inc., 106 AD3d at 1227), we discern no basis to disturb Supreme Court's determination that petitioners' reasonable expectations were substantially defeated by respondents' oppressive actions in 2001, 2004 and 2009 inasmuch as those actions intentionally diluted and ultimately sought to extinguish petitioners' ownership interest in the corporation (see Matter of Clever Innovations, Inc. [Dooley], 94 AD3d at 1176-1177; Matter of HGK Asset Mgt. [Greenhouse], 228 AD2d 246, 246 [1996]; compare Matter of Farega Realty Corp., 132 AD2d 797, 798 [1987]).

The record also amply supports Supreme Court's conclusion that respondents looted corporate assets. Here, the documentary evidence reflects that, between July 2005 and October

2012, respondents claim to have loaned the corporation over $750,000. A review of respondents' finances, however, indicates that their only present form of income was derived from their employment with the corporation but that, for many years, respondents chose not to cash their payroll checks. Despite this, respondents continued to declare income as earned from those checks on their tax returns. Based upon this evidence, Supreme Court found that respondents' financial information was inaccurate and that the record indicated that respondents "could not have accumulated the amount of money required" to make the large number of alleged loans to the corporation. Rather, Supreme Court found that the record supported the conclusion that respondents removed significant amounts of cash from the corporation, as evidenced by the large number of cash deposits made into their personal banking accounts, and then funneled a portion of that same money back into the corporation in the form of loans. Although respondents point to a promissory note as evidence that the loans were made, the note merely states that the corporation agrees to pay back "all loans borrowed" from respondents without specifying the amount of such loans or when the loans were made. Upon our review of the record evidence and after according deference to Supreme Court's finding that Tamara Chomiak and Kasian were "entirely dishonest" in regard to their finances and purported loans (see Matter of Sunburst Assoc., Inc., 106 AD3d at 1227), we similarly find no basis to disturb Supreme Court's determination that respondents looted corporate assets for noncorporate purposes. In light of respondents' oppressive actions and looting of corporate assets, we find that Supreme Court was fully justified in setting aside the 2004 issuance of 100 shares and respondents' alleged loans to the corporation, as well as the bonuses and the salary checks that respondents chose not to cash.

The parties' remaining contentions, to the extent not expressly addressed herein, have been reviewed and determined to be without merit.

McCarthy, J.P., Garry, Lynch and Devine, JJ., concur. Ordered that the order is affirmed, without costs.