Matter of Twin Bay Vil., Inc. (2022 NY Slip Op 02167)





Matter of Twin Bay Vil., Inc.


2022 NY Slip Op 02167


Decided on March 31, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 31, 2022

531923
[*1]In the Matter of the Dissolution of Twin Bay Village, Inc. Vladimir Chomiak et al., Respondents; Tatiana Chomiak Kasian, Also Known as Tanya Chomiak Kasian, et al., Appellants. Dennis J. Tarantino, as Receiver of Twin Bay Village, Inc., Respondent.

Calendar Date:February 9, 2022

Before:Lynch, J.P., Clark, Colangelo and Fisher, JJ.

Tatiana Chomiak Kasian, Philadelphia, Pennsylvania, appellant pro se.
Tamara L. Chomiak, Bolton Landing, appellant pro se.
Akerman LLP, New York City (Benjamin R. Joelson of counsel), for Vladimir Chomiak and another, respondents.
Tabner, Ryan & Keniry, LLP, Albany (William J. Keniry of counsel), for Dennis J. Tarantino, respondent.



Lynch, J.P.
Appeal from an order of the Supreme Court (Auffredou, J.), entered July 28, 2020 in Warren County, which, in a proceeding pursuant to Business Corporation Law article 11, among other things, granted the receiver's motion to confirm his final account for Twin Bay Village, Inc.
This case, involving the judicial dissolution of Twin Bay Village, Inc., a closely-held corporation owned by the parties, comes before us for a third time. In our initial decision, we affirmed a March 2016 order of Supreme Court (Muller, J.) directing the judicial dissolution of the corporation and the appointment of a receiver (153 AD3d 998 [2017], lv denied 31 NY3d 902 [2018]).[FN1] Thereafter, we affirmed a series of orders pertaining to the receiver, including an October 2016 order of Supreme Court (Auffredou, J.) ratifying a contract of sale of the resort property for $2.8 million (162 AD3d 1265 [2018]).
Following the sale of the property, the receiver moved for approval of his final accounting, attaching schedules of assets received and disbursements, all of which were deducted from respondents' 52% distributive share. Respondents filed objections and, in May 2019, upon its own initiative, Supreme Court referred the receiver's accounting to a second referee for examination and report (see Business Corporation Law § 1216 [c]). The second referee, upon review of the parties' submissions, recommended approval of the proposed final accounting with minor corrections. The receiver, in turn, moved to confirm the report and respondents cross-moved to reject it. By order entered July 28, 2020, Supreme Court confirmed the second referee's report in all respects, settling the receiver's account. Respondents appeal.
We begin by rejecting respondents' contention that Supreme Court erred in denying their claim against the corporation for unpaid loans, payroll checks and voided shares. In our initial decision, we expressly rejected these same claims, finding that Supreme Court (Muller, J.) "was fully justified in setting aside the 2004 issuance of 100 shares [to respondents] and respondents' alleged loans to the corporation, as well as the bonuses and the salary checks that respondents chose not to cash" (153 AD3d at 1004). We perceive no extraordinary circumstances to justify reopening these issues (see Eastern Mut. Ins. Co. v Kleinke, 308 AD2d 676, 677 [2003]; see generally People v Cummings, 31 NY3d 204, 208 [2018]; People v Evans, 94 NY2d 499, 503 [2000]). Nor may respondents pursue a claim under a purported $14,000 mortgage between the corporation and respondent Tamara L. Chomiak, dated March 21, 2014. Supreme Court expressly declared that mortgage to be "null and void" in the March 2016 order. In our second decision, we explained that the court issued a May 2016 supplemental order to modify its March 2016 order by adding certain recording information (162 AD3d at 1266). The appeal from that order was dismissed as untimely (id.).
We further conclude that the receiver [*2]properly denied respondents' credit card claims and Chomiak's claim for a five percent handler's fee with respect to the sale of the resort. On the latter claim, in our second decision, we confirmed the contract of sale "without excluding the agreed-upon brokerage fees" and explained that "respondents fail[ed] to provide any record proof regarding their contention that Chomiak is entitled to a five percent handler's fee" (162 AD3d at 1268). Beyond that, Chomiak's claim is based on the minutes of a June 1997 so- called emergency shareholders meeting, authorizing efforts to sell the corporation at a flexible $4.75 million price and a five percent handler's fee for Chomiak.[FN2] No actual purchaser was identified, and no such private sale ever took place. The receiver conducted the actual sale pursuant to the order of Supreme Court (Auffredou, J.) and within his statutory authority (see Business Corporation Law § 1206 [b] [2]). Under these circumstances, Chomiak was not entitled to a handler's fee.
We reach the same conclusion with respect to respondents' credit card claims. These claims pertain to charges that respondents incurred on their personal credit cards and a corporate card personally guaranteed by respondent Tatiana Chomiak Kasian between 2010 and 2019, ostensibly for corporate purposes. A permanent receiver is vested with title to all of the corporation's property (see Business Corporation Law § 1206 [a]). As such, respondents lacked any authority to incur debts against the corporation following the receiver's appointment in April 2016. As to the claims predating the receiver's appointment, given the lack of documentary evidence to validate these claims and the receiver's "fiduciary responsibilities" to the corporation (Matter of Kane [Freedman-Tenenbaum], 75 NY2d 511, 515 [1990] [internal quotation marks and citation omitted]), Supreme Court properly rejected these claims as well.
We do find merit in respondents' contention that the receiver erred in his final account by deducting all of the receiver's disbursements against respondents' distributive share. In the March 2016 order, Supreme Court (Muller, J.) specified that petitioners were to receive 48% of the net proceeds of sale "with net proceeds defined as the proceeds after adjustments for property taxes, real estate transfer tax, fuel, title and tax searches, attorneys' fees, broker's commissions and expenses normally associated with the sale of a commercial business and property" (emphasis added). The court further ordered respondents "to indemnify petitioners and hold them harmless should any tax liability be assessed against them or the [c]orporation as a result of, based upon or relating to the findings in the report of the referee." In its April 2016 order, the court instructed the receiver that "all of the fees, costs and expenses incurred by [him] . . . shall be paid entirely and exclusively from [r]espondents' share of the distribution of the assets." With these [*3]directives in place, the receiver, after deducting the "[e]xpenses of [s]ale" from the gross sale proceeds, charged the remaining disbursements from the receivership against respondents' distributive share as set forth in Schedule B of the Final Account of Receiver.
These disbursements included the corporation's entire capital gains tax on the sale. To charge that item entirely against respondents' distributive share was in error and an over-literal application of Supreme Court's March and April 2016 orders. Schedule B reports combined federal and state estimated tax payments made in July and October 2018 totaling $573,000. To the extent that these payments are for increased tax liability attributable to "debt forgiveness," they were properly charged to respondents in accord with the court's March 2016 order. That is not the case with respect to the capital gains tax, which would have accrued as a result of any sale, regardless of respondents' misconduct. Because we are unable, on this record, to delineate between the taxes attributable to "debt forgiveness" and the amount due to the capital gains, the matter must be remitted to Supreme Court (Auffredou, J.) for a recalculation of the parties' distributive shares.
Further adjustments are in order. The parties' distributive shares were properly adjusted for real estate taxes paid at closing in the amount of $65,886.78 as an expense of sale pursuant to the March 2016 order of Supreme Court (Muller, J.). Inconsistently, however, the receiver assigned other disbursements for 2015 and 2016 property taxes paid in July 2016 entirely against respondents' distributive share. Similarly, the receiver charged respondents with insurance, utilities and miscellaneous corporate taxes paid in 2016 and 2017. We do not find these charges attributable to respondents' misconduct underlying the dissolution of the corporation. Nor, for that matter, should the refunds for room deposits be so characterized. As such, each of these expenses should also be divided according to the parties' distributive shares.
Finally, Supreme Court (Auffredou, J.) duly exercised its discretion in holding back a partial distribution to respondents due to an unresolved issue of potential sales/occupancy tax attributable to unreported room rentals. We find respondents' remaining contentions without merit.
Clark, Colangelo and Fisher, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as confirmed that portion of the receiver's account that deducted all of the receiver's disbursements against the parties' distributive share; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The receiver, Dennis J. Tarantino, was appointed by order entered April 6, 2016.

Footnote 2: The minutes reveal that petitioners were not present at the meeting and there is no indication that petitioners were provided notice thereof.