[631 NYS2d 178]

In the Matter of the Estate of HARRY REICHENBAUM, Deceased. ELEANOR F. REICHENBAUM, as Executrix of HARRY REICHENBAUM, Deceased, Appellant-Respondent; REICHENBAUM & SILBERSTEIN, P. C., Respondent-Appellant.

Second Department, September 11, 1995

## APPEARANCES OF COUNSEL

*Ledy-Gurren & Blumenstock,* New York City *(Nancy Ledy-Gurren, John J. Bower* and *Deborah Bass* of counsel), for appellant-respondent.

*Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P. C.,* Uniondale *(John J. Barnosky, John R. Morken* and *Elizabeth W. Cohen* of counsel), for respondent-appellant.

## OPINION OF THE COURT

ALTMAN, J.

The principal issue on this appeal concerns the proper method of valuing a deceased shareholder's interest in a law firm which is a professional corporation. Absent an agreement to the contrary, we hold that Business Corporation Law § 1510 controls in determining that method.

In March 1980, Harry Reichenbaum and Jerome Silberstein formed a partnership for the practice of law. Later that year, they filed a certificate of incorporation to practice law as a professional corporation under the name of Reichenbaum & Silberstein, P. C. Their practice consisted primarily of personal injury and medical malpractice litigation.

Reichenbaum died in January 1988. After his will was admitted to probate, Eleanor F. Reichenbaum, as executrix of her deceased husband's estate, commenced this discovery proceeding pursuant to SCPA 2103 to identify and recover assets of the estate, specifically, compensation for the decedent's interest in the law firm. She contended that the value of the decedent's shares should include an amount attributable to contingency fee cases pending at the time of his death, a method of valuation opposed by the law firm. Other issues raised in the proceeding were whether the decedent had a 45% or 50% interest in the corporation and whether the

proceeds of life insurance policies purchased by the firm on the decedent's life were intended to constitute full payment for his interest in the firm.

After trial, the Surrogate issued a thorough decision in which he determined that: (1) the valuation of the decedent's interest was controlled by Business Corporation Law § 1510 and did not include pending contingency fee cases, (2) the decedent had a 45% interest in the corporation, and (3) the life insurance proceeds constituted additional compensation for the decedent's interest, not a payment in satisfaction of that interest. The petitioner, Mrs. Reichenbaum, appeals and the law firm cross-appeals from various portions of the decree subsequently signed by the Surrogate.

The Surrogate properly rejected the petitioner's contention that the decedent and Silberstein remained partners *inter se* despite the formation of a professional corporation and that the decedent's interest in the law firm should therefore be valued as if he were a partner. When the professional corporation was formed, the partnership ceased to exist and the relationship between the decedent and Silberstein was then governed by a different body of law. They were no longer partners and had only the rights and obligations of shareholders *(see, Notar-Francesco v Furci,* 149 AD2d 490, 491-492). Consequently, the Surrogate correctly concluded that the decedent's interest was to be valued in accordance with Business Corporation Law § 1510.

Pursuant to Business Corporation Law § 1510 (a), a professional service corporation must purchase a deceased shareholder's shares at their book value within six months of the appointment of a legal representative of the estate, absent a shareholders' agreement or other corporate document providing for an alternate method of valuation. Book value is to be determined as of the end of the month preceding the shareholder's death "from the books and records of the corporation in accordance with its regular method of accounting" (Business Corporation Law § 1510 [a]).

Here, there was no agreement between the decedent and Silberstein providing for a method of valuation upon the death of a shareholder. Therefore, the decedent's shares must be purchased at their book value, calculated in accordance with the law firm's regular method of accounting.

In contrast to other sections of the Business Corporation Law which provide for the valuation of stock at "fair value"

(Business Corporation Law § 623 [a]; § 1118 [a]), the Legislature specifically chose to employ the term "book value" in Business Corporation Law § 1510 (a). While that term is not defined in the statute, book value is generally determined by deducting liabilities from the total assets as they appear on the corporate books *(see, People ex rel. Knickerbocker Fire Ins. Co. v Coleman,* 107 NY 541, 543-544).

The testimony of the law firm's accountants, together with the firm's books and records which were admitted into evidence, established that the books were regularly maintained on a cash basis. Income was recorded only when received, and expenses only when paid. This method of accounting did not include accounts receivable or work in progress as assets and did not reflect any value for pending contingency fee cases.

Since the law firm's regular method of accounting was a cash method which did not recognize accounts receivable or work in progress as assets, the Surrogate properly applied Business Corporation Law § 1510 (a) in concluding that the book value of the decedent's shares did not include pending cases. Contrary to the petitioner's contention, the Surrogate did not erroneously interpret the statute in an overly restrictive manner. Rather, the Surrogate gave effect to the plain meaning of the clear and unambiguous statutory language *(see, Doctors Council v New York City Employees' Retirement Sys.,* 71 NY2d 669, 674-675).

The petitioner contends that the Surrogate should have used his equitable powers to achieve a "fair result" and determined that pending cases be included in the valuation, despite the language of the statute. Whether equity could ever intercede when application of the statute would produce a " 'harsh result' " *(Licitra v Shaw, Licitra, Eisenberg, Esernio & Schwartz,* 187 AD2d 640, 642; *see also, Diamond & Golomb v Diamond,* 189 AD2d 722) is an issue that we need not reach. Under the totality of the circumstances of this case where the petitioner will be receiving approximately $1,000,000 in various payments, the result is not inequitable.

We find that the Surrogate erred, however, in concluding that Reichenbaum had only a 45% interest in the law firm. The petitioner came forward with proof demonstrating that the decedent owned 50% of the shares of the corporation. The law firm failed to adduce sufficient competent evidence to rebut this proof and establish that the decedent's interest had been reduced to 45%.

The Surrogate properly determined that the life insurance proceeds constituted an additional payment to the estate and not a substitute for payment of the decedent's interest in the law firm. The law firm failed to prove the existence of any enforceable agreement limiting payment for Reichenbaum's shares to the proceeds of the policies. The firm's remaining contentions are without merit.

Accordingly, the decree is modified, on the facts, by deleting so much of the penultimate decretal paragraph as determined that the decedent's interest in the professional corporation at the time of his death was 45% of the shares of the corporation and substituting therefor a provision declaring the decedent to have held a 50% interest in the corporation; as so modified, the decree is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Surrogate's Court to determine the book value of the decedent's 50% of the shares in the corporation in accordance with the foregoing, and for the entry of an appropriate amended decree accordingly.

ROSENBLATT, J. P., HART and FRIEDMANN, JJ., concur.

Ordered that the decree is modified, on the facts, by deleting so much of the penultimate decretal paragraph as determined that the decedent's interest in the professional corporation at the time of his death was 45% of the shares of the corporation and substituting therefor a provision declaring the decedent to have held a 50% interest in the corporation; as so modified, the decree is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Surrogate's Court to determine the book value of the decedent's 50% of the shares in the corporation in accordance with the foregoing, and for the entry of an appropriate amended decree accordingly.