[925 NYS2d 122]

In the Matter of the Dissolution of MICHAEL BERNFELD, D.D.S., and YAKOV KURILENKO, D.D.S., P.C. MADELAINE BERNFELD, Appellant; YAKOV KURILENKO, Respondent.

Second Department, June 7, 2011

**APPEARANCES OF COUNSEL**

*Smith, Gambrell & Russell, LLP*, New York City (*J. Joseph Bainton* of counsel), for appellant.

*Anthony Agrippina,* Flushing (*Sherrie A. Taylor* of counsel), for respondent.

**OPINION OF THE COURT**

LEVENTHAL, J.

In this appeal, the principal issue before the Court is whether a nonprofessional, who is the transferee of a majority of shares in a professional service corporation, may obtain judicial dissolution of the corporation pursuant to Business Corporation Law § 1103. We conclude that the nonprofessional lacks standing to seek such relief.

Michael Bernfeld and Yakov Kurilenko, both dentists, were the only shareholders in a professional corporation known as "Michael Bernfeld, D.D.S., and Yakov Kurilenko, D.D.S., P.C." (hereinafter the P.C.). Bernfeld held 75% of the outstanding shares in the P.C. and Kurilenko held the remaining 25%. On September 29, 2009, Bernfeld died and, on November 19, 2009, his wife, Madelaine Bernfeld (hereinafter the petitioner), was appointed preliminary executor of his estate. Thereafter, according to the petitioner, dentist Fred Cohen offered to purchase the P.C. for the sum of $530,000. On February 16, 2010, a meeting of the P.C. was held, at which the petitioner, representing 75% of the P.C.'s shares, voted to dissolve the P.C., approve the sale of the P.C. to Cohen, and to appoint Cohen as business manager of the P.C.

By order to show cause and petition dated February 23, 2010, the petitioner commenced the instant proceeding seeking judicial dissolution of the P.C. pursuant to Business Corporation Law § 1103. The petition alleged that the P.C. had significant unpaid debts, and that, as a result, the petitioner had hired a business broker to help sell the P.C. The petition alleged that the petitioner attempted to work with Kurilenko to resolve any issues related to the P.C., but he had not cooperated.

Kurilenko then moved, inter alia, to dismiss the petition pursuant to CPLR 3211 (a). Kurilenko argued that the petition should be dismissed because the petitioner could not take control of the P.C., as she was not a licensed dentist. He further argued that the petitioner's only remedy was to commence an action pursuant to Business Corporation Law § 1510 to compel the P.C. to purchase her shares, and that she was only entitled to the book value of her shares. In that regard, Kurilenko submitted a copy of a letter dated April 30, 2010, in which he informed the petitioner that the net book value of her shares

was less than zero, i.e., negative $795. To this letter, Kurilenko attached a forensic analysis opining the total net book value of the P.C. to be negative $159,000.

In opposition, the petitioner argued that while she was a "disqualified shareholder" within the meaning of Business Corporation Law §§ 1509 and 1511 by virtue of her lack of a license to practice dentistry, she was entitled to hold shares in the P.C. because she acquired those shares by operation of law following the decedent's death. Further, the petitioner conceded that the book value of the P.C. was less than zero, but argued that the book value did not consider the P.C.'s goodwill and the actual value of the P.C.'s assets.

In an order dated May 20, 2010, the Supreme Court held that the petitioner had no recourse to judicial dissolution under Business Corporation Law § 1103, noting that the express limitations of Business Corporation Law § 1511 restrict voting by nonprofessional transferees of shares only to the matters listed in Business Corporation Law §§ 909 and 1001. With respect to the petitioner's contention that a shareholder meeting was held to voluntarily dissolve the P.C. pursuant to Business Corporation Law § 1001, the Supreme Court stated that "such action pursuant to Business Corporation Law § 1001 provides no requirement for court action and, as such, the court remains silent as to the propriety of the resolution of such shareholder meeting." Since it dismissed the underlying petition, the Supreme Court also denied the petitioner's request that the Supreme Court permit the sale of the P.C. to Dr. Cohen. The petitioner appeals.

On appeal, the petitioner argues that, pursuant to Business Corporation Law § 1001, she was permitted to vote to dissolve the P.C., and then seek judicial dissolution of the P.C. pursuant to Business Corporation Law § 1103. She contends that "the lower court [sic] missed the point that before shareholders can file a petition for judicial dissolution pursuant to Business Corporation Law § 1103, they must first (a) convene a meeting pursuant to Business Corporation Law § 1001 and (b) at that meeting vote in sufficient numbers to dissolve."

Kurilenko argues that the petitioner seeks to avoid the mandate of Business Corporation Law § 1510 by attempting to dissolve the P.C. and then convey it to another party. Kurilenko also argues that his offer to purchase her shares for $0 was both timely, since the offer was made within the six months afforded by Business Corporation Law § 1510, and that it was properly

made. Lastly, Kurilenko argues that the proposed sale to Dr. Cohen is a regular transactional sale and that, pursuant to Business Corporation Law § 1511, the petitioner, a nonprofessional, may not exercise a vote in favor of such a sale.

In reply, the petitioner argues that the redemption of her shares pursuant to Business Corporation Law § 1510 is not her sole remedy, and that Business Corporation Law § 1511 specifically permits her to vote for dissolution of the P.C. pursuant to Business Corporation Law § 1001. She argues that, because the P.C. was dissolved on February 16, 2010, Kurilenko's April 30, 2010 offer to purchase her shares for $0 is a nullity by operation of Business Corporation Law § 1005, which governs procedures after dissolution. In the alternative, the petitioner asserts that, assuming Business Corporation Law § 1510 applies, the book value of the P.C. may not be used to calculate the value of her shares, since such a valuation would result in a windfall to Kurilenko.

We affirm the order insofar as appealed from.

■ A professional service corporation may only issue shares to an individual who is a licensed member of the profession of which the corporation is authorized to practice (see Business Corporation Law § 1507). However, the Business Corporation Law contemplates the possibility that, upon a professional shareholder's death, his or her estate will come into possession of the shares. Two sections of Business Corporation Law article 15, relating to professional corporations, are relevant to the rights of such shareholders who are transferees by "operation of law": Business Corporation Law §§ 1510 and 1511.

Business Corporation Law § 1510, entitled "Death or disqualification of shareholders," states, in pertinent part:

> "A professional service corporation *shall purchase or redeem* the shares of a shareholder in case of his death . . . within six months after the appointment of the executor or administrator or other legal representative of the estate of such deceased shareholder . . . at the *book value* of such shares as of the end of the month immediately preceding the death or disqualification of the shareholder as determined from the books and records of the corporation in accordance with its regular method of accounting. The certificate of incorporation, the *by-laws of the corporation or an agreement among the corporation and all shareholders may modify*

*this section by providing for a shorter period of purchase or redemption, or an alternate method of determining the price to be paid for the shares, or both.* If the corporation shall fail to purchase or redeem such shares within the required period, a successful plaintiff in an action to recover the purchase price of such shares shall also be awarded reasonable attorneys' fees and costs" (emphasis added).

Business Corporation Law § 1511, entitled "Transfer of shares," states, in pertinent part:

"No shareholder of a professional service corporation may sell or transfer his shares in such corporation except to another individual who is eligible to have shares issued to him by such corporation or except in trust to another individual who would be eligible to receive shares if he were employed by the corporation. Nothing herein contained shall be construed to prohibit the transfer of shares by operation of law or by court decree. *No transferee of shares by operation of law or court decree may vote the shares for any purpose whatsoever except with respect to corporate action under [Business Corporation Law § 909] and [Business Corporation Law § 1001]* . . . Any sale or transfer, except by operation of law or court decree or except for a corporation having only one shareholder, may be made only after the same shall have been approved by the board of directors, or at a shareholders' meeting specially called for such purpose by such proportion, not less than a majority, of the outstanding shares as may be provided in the certificate of incorporation or in the by-laws of such professional service corporation. At such shareholders' meeting the shares held by the shareholder proposing to sell or transfer his shares may not be voted or counted for any purpose, unless all shareholders consent that such shares be voted or counted" (emphasis added).

With respect to the passages emphasized above, Business Corporation Law § 909 (a) addresses the "sale, lease, exchange or other disposition of all or substantially all the assets of a corporation," and Business Corporation Law § 1001 relates to

voluntary dissolution of a corporation by a vote of two thirds of the outstanding shares.

Reading Business Corporation Law §§ 1510 and 1511 together reveals that the petitioner, a transferee of shares by operation of law, has two sets of rights: (1) the right to have the corporation purchase her shares pursuant to Business Corporation Law § 1510, and (2) the right to vote as a shareholder, but only with respect to actions taken pursuant to Business Corporation Law §§ 909 and 1001. While the petitioner asserts that the P.C.'s ability to purchase her shares pursuant to Business Corporation Law § 1510 was extinguished by the vote on February 16, 2010 to voluntarily dissolve the P.C. pursuant to Business Corporation Law § 1001, Kurilenko responds that the petitioner can dispute the $0 per share offer in an action to enforce her rights under Business Corporation Law § 1510. Assuming that the vote to dissolve the P.C. pursuant to Business Corporation Law § 1001 was not affected by Kurilenko's offer to purchase the petitioner's shares, the petitioner's attempt to seek judicial dissolution pursuant to Business Corporation Law § 1103 was improper. This is because, as discussed below, the petitioner seeks to amplify her right to vote for nonjudicial dissolution to also allow her to vote for judicial dissolution.

Under Business Corporation Law article 10, a professional corporation may be dissolved by way of nonjudicial dissolution (*see* Business Corporation Law § 1001 [a]). Business Corporation Law § 1001 provides, as relevant to the instant case, that "[s]uch dissolution shall be authorized at a meeting of shareholders by . . . two-thirds of the votes of all outstanding shares entitled to vote thereon" (Business Corporation Law § 1001 [a]). Business Corporation Law article 10 further illustrates how such a voluntary dissolution is to be effectuated. Pursuant to Business Corporation Law § 1003 (a), a "certificate of dissolution" is to be signed and delivered to the Department of State. Business Corporation Law § 1004 provides that the New York State Department of State (hereinafter the Department of State) shall not accept such a certificate for filing unless the New York State Department of Taxation and Finance consents, and that *"[u]pon such filing, the corporation is dissolved"* (Business Corporation Law § 1004 [a] [emphasis added]).

In contrast to the provisions authorizing nonjudicial dissolution, Business Corporation Law article 11 articulates several different methods to obtain judicial dissolution of a professional

corporation.[1] As relevant here, Business Corporation Law § 1103 states:

> "(a) If the shareholders of a corporation adopt a resolution stating that they find that its assets are not sufficient to discharge its liabilities, or that *they deem a dissolution to be beneficial to the shareholders, the shareholders* or such of them as are designated for that purpose in such resolution may present a petition for its dissolution. . . .
>
> "(c) Such a resolution may be adopted at a meeting of shareholders by vote of a majority of the votes of all outstanding shares entitled to vote thereon" (emphasis added).

As discussed above, Business Corporation Law § 1511 enumerates the specific matters upon which a nonprofessional shareholder in a professional corporation who owns shares by operation of law may vote. Although voluntary dissolution under Business Corporation Law § 1001 is one of those matters, a vote in favor of a shareholder's petition for judicial dissolution pursuant to Business Corporation Law § 1103 is not. Thus, Business Corporation Law § 1511, standing alone, statutorily bars the petitioner from obtaining a judicial dissolution of the P.C. pursuant to Business Corporation Law § 1103.

The petitioner's attempt to sell the P.C. to Dr. Cohen is not merely an attempt to liquidate its assets. Rather, it is an attempt to obtain value for the goodwill of the practice to which the decedent likely contributed. If the P.C. had consisted of a single shareholder, the sale of the P.C. to an outside professional upon the decedent's death would have been permitted without exception (*see* Business Corporation Law § 1511).[2] However, as discussed above, article 15 of the Business Corporation Law

---

1. Those methods are: (1) an attorney general's action under Business Corporation Law § 1101, (2) a directors' petition under Business Corporation Law § 1102, (3) a shareholders' petition under Business Corporation Law § 1103, (4) a shareholders' or directors' petition in case of deadlock under Business Corporation Law § 1104, and (5) a petition under certain enumerated "special circumstances" under Business Corporation Law § 1104-a (*see* Business Corporation Law art 11).

2. Business Corporation Law § 1511 provides, in pertinent part:
   "Any sale or transfer, except by operation of law or court decree or *except for a corporation having only one shareholder*, may be made only after the same shall have been approved by the board of directors, or at a shareholders' meeting specially called for such purpose by such proportion, not less than a majority, of the

protects the interests of surviving shareholders such as Kurilenko. These provisions include Kurilenko's right to veto any attempt by the petitioner to introduce another professional into the practice.

Notwithstanding the foregoing, we are compelled to address this Court's decision in *Matter of Fromcheck v Brentwood Pain & Med. Servs.* (254 AD2d 485 [1998]), which is the only case decided by this Court that discusses the restrictions placed upon a nonprofessional shareholder's authority to vote pursuant to Business Corporation Law § 1511. In *Fromcheck*, the petitioner, who was not a medical professional, commenced a proceeding pursuant to Business Corporation Law § 1104-a for the judicial dissolution of certain medical professional corporations in which she allegedly owned shares. Business Corporation Law § 1104-a provides that "[t]he holders of shares representing twenty percent or more of the votes of all outstanding shares of a corporation . . . *entitled to vote in an election of directors* may present a petition of dissolution" upon grounds which include fraud, looting, waste, or diversion of assets for noncorporate purposes by the directors or managers (Business Corporation Law § 1104-a [a] [emphasis added]). This Court held that because the subject corporations were medical corporations and the petitioner was not authorized to practice in the medical profession, the petitioner could only vote her shares if she were a transferee of those shares by operation of law. This Court then determined that "even if the petitioner" were a transferee of 20% or more of the shares in the corporations by operation of law, "she would still be forbidden from voting those shares . . . except [for] corporate action under [Business Corporation Law §§ 909 and 1001]" (*Matter of Fromcheck v Brentwood Pain & Med. Servs.*, 254 AD2d at 486 [internal quotation marks omitted], quoting Business Corporation Law § 1511). Referring to the provision of Business Corporation Law § 1104-a (a) that a petition may only be filed by shareholders "entitled to vote in an election of directors," we held that because Business Corporation Law §§ 909 and 1001 do not relate to the election of directors, the petitioner was not entitled to vote in an election of directors and, therefore, there was no basis upon which

outstanding shares as may be provided in the certificate of incorporation or in the by-laws of such professional service corporation. At such shareholders' meeting *the shares held by the shareholder proposing to sell or transfer his shares may not be voted or counted for any purpose,* unless all shareholders consent that such shares be voted or counted" (emphasis added).

the petitioner could establish the prerequisites necessary for her to present the petition for judicial dissolution of the subject corporations (*see Matter of Fromcheck v Brentwood Pain & Med. Servs.*, 254 AD2d at 486).

Arguably, the *Fromcheck* decision implies that if Business Corporation Law §§ 909 and 1001 related to the election of directors, then a petition pursuant to Business Corporation Law § 1104-a may have been permitted. In *Fromcheck*, there was no evidence that the petitioner, a nonprofessional, actually owned any shares in the subject corporations by operation of law. Therefore, there was no need to consider whether the petition was barred since Business Corporation Law §§ 909 and 1001 do not relate to the election of directors (*see Artigas v Renewal Arts Realty Corp.*, 22 AD3d 327 [2005]). A contrary holding cannot be reconciled with the provision of Business Corporation Law § 1511 that a nonprofessional may not vote his or her shares "for *any* purpose whatsoever except with respect to corporate action under [Business Corporation Law §§ 909 and 1001]" (emphasis added).

Unlike Business Corporation Law § 1104-a, Business Corporation Law § 1103 does not contain the limitation that dissolution may only be sought by shareholders "entitled to vote in an election of directors" (Business Corporation Law § 1104-a [a]). Since the *Fromcheck* decision suggests that the phrase "entitled to vote in an election of directors," as set forth in Business Corporation Law § 1104-a (a), was a factor in prohibiting a nonprofessional shareholder in a professional corporation who owns shares by operation of law from seeking judicial dissolution under Business Corporation Law § 1104-a, the question left unanswered is whether such a shareholder may seek judicial dissolution pursuant to Business Corporation Law § 1103 simply because the limiting language is absent from section 1103. We answer this question in the negative.

Judicial dissolution under Business Corporation Law § 1103 is characteristically different from judicial dissolution under Business Corporation Law §§ 1104-a and 1104. A petition under Business Corporation Law § 1104-a relates to fraud or other misconduct by the directors, and may be filed by the holders of only 20% of the shares. Similarly, Business Corporation Law § 1104, which allows for judicial dissolution in case of director or shareholder deadlock, also contains the phrase "entitled to vote in an election of directors." Since Business Corporation Law §§ 1104-a and 1104 are both aimed at the conduct of, or

disagreement among, directors, it is sensible to conclude that only the shareholders who are entitled to vote for or against those directors may file a petition for judicial dissolution under those statutes. By contrast, the right of a shareholder to vote for judicial dissolution under Business Corporation Law § 1103 is restricted only by the language in that section which states: "Such a resolution may be adopted . . . by [a] vote of a majority of the votes of all outstanding shares *entitled to vote thereon*" (Business Corporation Law § 1103 [c] [emphasis added]). That limitation should be read to permit the certificate of incorporation to restrict voting under Business Corporation Law § 1103 to certain classes of shares, or to preclude shareholders such as the petitioner, whose rights as a nonprofessional shareholder are limited by Business Corporation Law article 15, from seeking judicial dissolution under that section.

██ Thus, *Fromcheck* cannot be read to permit a nonprofessional shareholder to vote for judicial dissolution pursuant to Business Corporation Law § 1103. Business Corporation Law § 1511 clearly proscribes the types of corporate action upon which a nonprofessional shareholder, such as the petitioner, may vote (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 76 ["Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation"]). We hold that Business Corporation Law § 1511 contains the exclusive list of matters upon which a nonprofessional shareholder may vote, and is dispositive upon the matter sub judice. Although there may be compelling reasons why a nonprofessional shareholder should be entitled to seek judicial dissolution, "[a] statute must be construed and applied as it is written by the Legislature" and not as some courts or litigants believe it should have been written (*People v Olah*, 300 NY 96, 102 [1949]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 363, at 525). Since Business Corporation Law § 1511 only permits a nonprofessional shareholder to vote on corporate action pursuant to either Business Corporation Law § 909 or § 1001, the Supreme Court properly dismissed the petition. Further, since the Legislature enabled nonprofessional shareholders to seek voluntary dissolution under Business Corporation Law § 1001, which requires a two-thirds majority vote, it seems unlikely that the Legislature intended to permit a nonprofessional shareholder to seek judicial dissolution pursuant to Business Corporation Law § 1103 with a mere majority vote.

In addition, the Supreme Court properly determined that the resolution dated February 16, 2010, dissolving the P.C., did not, as required by Business Corporation Law § 1103, state that the shareholders determined "that [the P.C.'s] assets are not sufficient to discharge its liabilities, or that they deem a dissolution to be beneficial to the shareholders" (Business Corporation Law § 1103 [a]). It seems the petitioner's failure to adopt such a resolution has its genesis in her misapprehension of the distinctions between *voluntary* dissolution under Business Corporation Law article 10 and *judicial* dissolution under Business Corporation Law article 11, addressed below. Indeed, once a resolution to dissolve pursuant to Business Corporation Law § 1001 has been adopted, dissolution is effectuated by filing a certificate of dissolution with the Department of State (*see* Business Corporation Law §§ 1003, 1104). Thus, a nonjudicial dissolution pursuant to Business Corporation Law § 1001 does not require a court's permission,[3] the Supreme Court correctly determined that dissolution pursuant to Business Corporation Law § 1001 does not require court action and, therefore, there was no need to address the impact, if any, of the resolution dated February 16, 2010.

██ There is no basis upon which to grant the petitioner's additional request to permit a sale of the assets of the P.C. to Dr. Cohen. There is no evidence that the P.C. has actually been dissolved, for example, by the filing of a certificate of dissolution pursuant to Business Corporation Law § 1001 with the Department of State (*see* Business Corporation Law §§ 1003, 1004). Further, in her attempt to dissolve the P.C. and sell its assets to Dr. Cohen, the petitioner seeks to avoid compliance with the limitations articulated in Business Corporation Law § 1511 with respect to stock sales by a nonprofessional shareholder that might otherwise be effectuated by selling the P.C. in an asset sale. Moreover, it remains unresolved whether the P.C.'s right to purchase the petitioner's shares pursuant to Business Corporation Law § 1510 can be nullified by dissolution. Once dissolved, a corporation continues to "function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place" (Business Corporation Law § 1006 [a]). Arguably, in this postdissolution state, the P.C. could still act under Business Corporation Law § 1510.

---

**3.** The one exception in the statute provides that, after the filing of a certificate of dissolution, the Supreme Court has jurisdiction to supervise various matters (*see* Business Corporation Law § 1008).

The parties' contentions regarding Kurilenko's timely offer[4] to purchase the petitioner's shares pursuant to Business Corporation Law § 1510 for "book value" of $0 are more properly raised in an action to compel purchase or redemption (*see Moroze & Sherman v Moroze*, 221 AD2d 160 [1995] [in action to determine the price at which plaintiff professional corporation is required to purchase or redeem the shares of its deceased 50% shareholder pursuant to Business Corporation Law § 1510, the Court concluded that there were triable issues of fact as to whether the plaintiff's method of valuation at book value would produce a windfall to the surviving shareholder as well as an unjust hardship to the decedent's estate]; *see also Matter of Reichenbaum*, 214 AD2d 48, 51 [1995] ["book value is generally determined by deducting liabilities from the total assets as they appear on the corporate books"]; *Licitra v Shaw, Licitra, Eisenberg, Esernio & Schwartz*, 187 AD2d 640 [1992]). Such an action would be the appropriate vehicle in which the petitioner could argue that compelling her to sell her shares at "book value" would result in an unjust hardship to the decedent's estate or result in a windfall to Kurilenko (*see Gursel v Southern Westchester Urology Group, P.C.*, 18 AD3d 431 [2005]; *Moroze & Sherman v Moroze*, 221 AD2d 160 [1995]). Lastly, we note that the entire controversy relating to the valuation of the petitioner's shares could have been obviated had the decedent and Kurilenko crafted a certificate of incorporation, shareholder agreement, or other provision providing for a method of valuation of the P.C., other than by the book value, in accord with the P.C.'s regular method of accounting (*see* Business Corporation Law § 1510).

Accordingly, the order is affirmed insofar as appealed from.

Skelos, J.P., Balkin and Sgroi, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.

---

4. The offer was made within six months after the petitioner's appointment as preliminary executor of the decedent's estate.