[999 NYS2d 731]

Zᴇʟᴏᴜꜰ Iɴᴛᴇʀɴᴀᴛɪᴏɴᴀʟ Cᴏʀᴘ., Petitioner, v Nᴀʜᴀʟ Zᴇʟᴏᴜꜰ, Respondent.

Supreme Court, New York County, December 22, 2014

**APPEARANCES OF COUNSEL**

*Cooley LLP* for petitioner.
*Wolf Haldenstein Adler Freeman & Herz LLP* for respondent.

**OPINION OF THE COURT**

SHIRLEY WERNER KORNREICH, J.

In this fair value proceeding, the parties each move for partial reargument of the court's trial decision, which is set forth in an order dated October 6, 2014 (45 Misc 3d 1205[A], 2014 NY Slip Op 51462[U] [2014] [the Decision]). Familiarity with the Decision is assumed, and all defined terms used herein have the same meaning as in the Decision. For the reasons that follow, the court addresses the parties' reargument applications on four issues (statute of limitations, total damages calculation, SEAM, and DLOM), denies reargument on all other matters, and adheres to the Decision on all issues except for the statute of limitations and total damages calculation.

At the outset, the court notes that it will not discuss in detail and hence denies reargument on its holding that Danny misappropriated $14 million from the Company between 2004 and 2010, a conclusion proven by Lesser's forensic analysis of the MOD2 records and the Company's financial statements. "A motion for leave to reargue . . . shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion." (CPLR 2221 [d] [2]; *see Mendez v Queens Plumbing Supply, Inc.*, 39 AD3d 260 [1st Dept 2007].) The court did not overlook any material law or fact with respect to Lesser's analysis.

However, since the Decision was issued, another Commercial Division Justice issued a fair value decision in a case with striking similarities to the instant proceeding. (*See Cortes v 3A N. Park Ave Rest Corp.*, 46 Misc 3d 670 [Sup Ct, Kings County, Oct. 28, 2014, Demarest, J.].) In *Cortes*, the company fought tooth and nail to avoid producing complete and reliable financial records in order to "hide the true value and the extent of [its] defalcation" (*id.* at 692), just as the Company here did with MOD2. Justice Demarest, therefore, allowed plaintiff's forensic expert to rely on a sample of the company's records to establish the real value of the business. (*See id.* at 693 ["The defendants cannot be permitted to benefit from their purposefully inadequate record-keeping, as a means of concealing their diversion of funds, to defeat plaintiff's claims. The sole reason that the plaintiff's expert (extrapolated based on sampling) . . . is because the defendants maintained such inadequate, and obviously fraudulent, records"].) *Cortes*, moreover, provides support for this court's reliance on sophisticated forensic analysis to prove the existence of corporate value not reflected on the company's financial records.

## I. Statute of Limitations

In the Decision, the court erred by applying CPLR 214 (4)'s three-year statute of limitations to Nahal's derivative claims. On reargument, Nahal correctly avers that the applicable statute is CPLR 213 (7), which provides a six-year limitations period for

> "an action by or on behalf of a corporation against a present or former director, officer or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or

forfeiture, or to recover damages for waste or for an injury to property or for an accounting in conjunction therewith." (*See Oxbow Calcining USA Inc. v American Indus. Partners*, 96 AD3d 646, 651-652 [1st Dept 2012].)

In opposition, petitioner argues that CPLR 213 (7) does not apply because this is an appraisal proceeding under Business Corporation Law § 623, not a plenary derivative action. However, as noted in the Decision and the merger order, quasi-derivative claims are relatively unknown in New York. (*See* 2014 NY Slip Op 51462[U], *5 n 6.) Unsurprisingly, as a result, petitioner cites no case, nor does there appear to be any that holds CPLR 213 (7) does not apply to quasi-derivative claims in an appraisal proceeding.

This court holds that CPLR 213 (7) applies because, as discussed in the court's prior decisions, the allowance of the merger was predicated on Nahal being able to assert her derivative claims in the instant proceeding. Hence, whatever derivative claims were not time-barred in the derivative action should not be deemed time-barred in this action.Since the derivative action was commenced in December 2009, Nahal is entitled to maintain derivative claims as far back as December 2003, six years beforehand. As a result, all of the derivative damages, from 2004 through 2010, are timely. Consequently, the court vacates its statute of limitations ruling in the Decision and holds that none of Nahal's derivative claims are time-barred.

## II. Total Damages Calculation

The court instructed the parties to submit proposed judgments after the reference on attorneys' fees was completed. (*See* 2014 NY Slip Op 51462[U], *15.) In an attempt to avoid relitigation of the Decision at the judgment stage, the court thought it prudent to provide the parties with guidance on how the various categories of damages should be computed. This was a mistake. Rather than thoroughly discuss the exact amounts due, the court vacates its holdings on its damages calculations and defers the matter until after the reference is completed. To be clear, the court is also vacating its decision that prejudgment interest of 9% is necessarily required. Business Corporation Law § 623 (h) (6) provides that the court should apply an "equitable" interest rate.[1] (*See Matter of Jamaica Acquisition, Inc. v Shea*, 25 Misc 3d 1212[A], 2009 NY Slip Op 52046[U], *27 [Sup Ct, Nassau County 2009].)

---

1. Business Corporation Law § 623 (h) (6) states:

The parties' motion practice over the Referee's report shall include their position on the total calculation of damages and how much prejudgment interest is equitable. The briefing shall be limited to how much Nahal's total award should be and its breakdown, but may not serve as yet another round of re-argument on the merits.

## III. SEAM

In the Decision, the court held that an S-corporation equity adjustment multiple (SEAM) adjustment should not be made. (*See* 2014 NY Slip Op 51462[U], *6-7.) The court adheres to that determination and rejects Nahal's additional arguments on the matter. The court only mentions SEAM because, as noted above, the court's damages breakdown is vacated. The parties' proposed judgments must utilize Vannucci's valuation without a SEAM adjustment.

## IV. DLOM

■ Finally, the court abides by its decision not to apply a discount for lack of marketability (DLOM). The factual basis for finding a DLOM inappropriate in this case is set forth in the Decision (*see id.* at *7-8) and will not be repeated here. However, given New York's contentious DLOM jurisprudence and the persuasive opinions of the academic community and non-New York courts, this court believes the issue merits further discussion.

The court begins by noting that no New York appellate court has ever held that a DLOM *must* be applied to a fair value appraisal of a closely held company. On the contrary, the Court of Appeals has held that "there is no single formula for mechanical application." (*Matter of Seagroatt Floral Co. [Riccardi]*, 78 NY2d 439, 445 [1991].) Indeed, the Court of Appeals recognizes that "[v]aluing a closely held corporation is not an exact science" because such corporations "by their nature contradict the

"The final order shall include an allowance for interest at such rate as the court finds to be equitable, from the date the corporate action was consummated to the date of payment. In determining the rate of interest, the court shall consider all relevant factors, including the rate of interest which the corporation would have had to pay to borrow money during the pendency of the proceeding. If the court finds that the refusal of any shareholder to accept the corporate offer of payment for his shares was arbitrary, vexatious or otherwise not in good faith, no interest shall be allowed to him."

concept of a 'market' value." (*Id.*) As set forth in the Decision, since Danny is not likely to give up control of the Company, Nahal should not recover less due to possible illiquidity costs in the event of a sale that is not likely to occur.[2]

In effect, applying a DLOM here would be the economic equivalent of imposing a minority discount—that is, Nahal realizing less for her shares because she is being forced to sell while Danny gets to realize their full value by staying in control. It is well settled that minority discounts are not permitted under New York law. (*See Matter of Friedman v Beway Realty Corp.*, 87 NY2d 161, 169 [1995].) Indeed, it is the tension between the application of a DLOM, which is done in most cases but is not *legally required*, and the practical effect of a DLOM here serving as a minority discount, repugnant to New York courts and *never allowed*, that drives the court's ruling.

Moreover, although the court is aware that this is a commercial part which strictly adheres to legal principles and does not decide cases based on sympathy, the Decision should make clear that nothing about how Nahal has been treated in any way resembles normative notions of fairness. Her husband was rendered comatose shortly after he complained about the controlling family members' conduct, she and her husband were deprived of company medical insurance when she complained about the controlling family members' conduct, her equity was taken from her on the eve of trial before a jury when the controlling family members effected a freeze-out merger, and, throughout it all, Nahal incurred millions of dollars of legal costs.

---

**2.** In another recent fair value decision, the court's DLOM analysis included the following observation:

> "[In *Zelouf*, the] court . . . concluded 'any liquidity risk associated with [the company to be valued] is more theoretical than real.' [2014 NY Slip Op 51462(U), *8] . . . By contrast, as readily demonstrated by the stalled Nestle negotiations, the very reasons for a DLOM here have resulted in—or are at least strongly correlated with—the failure of Ferolito to sell his shares prior to this proceeding." (*Ferolito v Arizona Beverages USA LLC*, 2014 NY Slip Op 32830[U], *34 [Sup Ct, Nassau County, Oct. 14, 2014, Driscoll, J.].)

Indeed, in support of his application of a DLOM, Justice Driscoll further noted there was actual evidence of the company's illiquidity, including, inter alia, that prior expressions of interest in the company did not result in a sale and that the owners' agreement contained sale restrictions. (*See id.*)

Finally, it should be noted that serious consideration ought to be given to arguments made by those who question the theoretical and empirical underpinnings of the premises behind DLOMs. (*See generally* Peter A. Mahler, New York Business Divorce, *The Marketability Discount in Fair Value Proceedings: An Emperor Without Clothes?* [July 11, 2011], http://www.nybusinessdivorce.com/2011/07/articles/valuation-discounts/the-marketability-discount-in-fair-value-proceedings-an-emperor-without-clothes/ [and links to other analysis therein]; *see also Floorgraphics, Inc. v News Am. Mktg. In-Store Servs., Inc.*, 546 F Supp 2d 155, 177 n 7 [D NJ 2008].) This is an area of heated debate in the legal and valuation communities, and more compelling appellate resolution of these issues would surely be welcomed by all.

Additionally, in other jurisdictions, courts have refused to apply a DLOM for various reasons in cases such as this. (*See Lawson Mardon Wheaton, Inc. v Smith*, 160 NJ 383, 402, 734 A2d 738, 749 [1999] ["We find most persuasive those cases holding that marketability discounts should not be applied in determining the 'fair value' of a dissenting shareholder's share in an appraisal action"];[3] *Camino, Inc. v Wilson*, 59 F Supp 2d 962, 971 [D Neb 1999] [applying a DLOM "would allow the ma-

---

**3.** In *Lawson*, the Supreme Court of New Jersey set forth an extensive and nuanced discussion of DLOM and made a number of important observations. (*See e.g.* 160 NJ at 395, 734 A2d at 745 ["courts and commentators are divided on the question of whether to apply a marketability discount . . . the weight of authority is against applying the discount . . . and marketability discounts have been viewed as especially inapplicable to intra-family transfers in closely-held companies" (internal quotation marks omitted)]; 160 NJ at 396-397, 734 A2d at 745-746 [discussion of difference between "fair value" and "fair market value"]; 160 NJ at 401, 734 A2d at 748 ["equitable considerations have led the majority of states and commentators to conclude that marketability and minority discounts should not be applied when determining the fair value of dissenting shareholders' stock in an appraisal action"]; 160 NJ at 402, 734 A2d at 749 ["The history and policies behind dissenters' rights and appraisal statutes lead us to conclude that marketability discounts generally should not be applied when determining the 'fair value' of dissenters' shares in a statutory appraisal" absent "extraordinary circumstances"]; 160 NJ at 407-408, 734 A2d at 752 ["a marketability discount cannot be used unfairly by controlling or oppressing shareholders to benefit themselves to the detriment of the minority or oppressed shareholders"]; *cf. Wisniewski v Walsh*, 2013 WL 1296067, \*13, 2013 NJ Super Unpub LEXIS 724, \*34 [App Div, Apr. 2, 2013, Nos. A-0825-10T4, A-0826-10T4] [DLOM applicable where "the oppressed shareholder ordered to buy out the oppressor" because, if no DLOM was applied, *"the innocent party would inequitably be forced to shoulder the entire burden of the asset's illiquidity"* (emphasis added)]; *accord Balsamides v Protameen Chems., Inc.*, 160 NJ 352, 376-377, 734 A2d 721, 734-735 [1999].)

jority to victimize the minority," which is not allowed and is incompatible with a valuation of a corporation as a going concern]; *Cox Enters., Inc. v News-Journal Corp.*, 469 F Supp 2d 1094, 1108-1109 [MD Fla 2006] [noting that in Florida, courts may apply DLOM, but it is not mandatory, and refusing to apply DLOM based on restricted stock study comparisons in lieu of actual evidence of illiquidity of company being valued], *affd* 510 F3d 1350 [11th Cir 2007]; *Diluglio v Providence Auto Body, Inc.*, 1997 WL 839873, *2-3, 1997 RI Super LEXIS 40, *5-6 [Jan. 13, 1997, C.A. No. 89-0628] [Rhode Island Superior Court prohibits DLOMs and disagrees with New York's interpretation of fair value]; *accord Charland v Country View Golf Club, Inc.*, 588 A2d 609, 612-613 [RI 1991].)[4]

That being said, this court is *not* holding that a DLOM is necessarily legally inappropriate in valuations of closely held companies. Such a holding would be incompatible with binding New York precedent. Rather, in this case, under the unique set of facts set forth in the Decision, applying a DLOM is unfair. This court's understanding of the applicable precedent is that, while many corporate valuation principles ought to guide this court's analysis, this court's role is not to blithely apply formalistic and buzzwordy principles so the resulting valuation

---

**4.** Delaware takes a more nuanced approach. Delaware, like New York, does not allow for minority discounts, and also prohibits a "discount [that] generally relates to the marketability of the company's shares." (*See Gearreald v Just Care, Inc.*, 2012 WL 1569818, *11, 2012 Del Ch LEXIS 91, *42 [Apr. 30, 2012, C.A. No. 5233-VCP].)

> " 'To the extent Respondent is arguing for the application of a "corporate level" discount to reflect the fact that all shares of WXL shares were worth less because there was no public market in which to sell them, I read *Cavalier Oil* as prohibiting such a discount. This is simply a liquidity discount applied at the "corporate level." Even if taken "at the corporate level" (in circumstances in which the effect on the fair value of the shares is the same as a "shareholder level" discount) such a discount is, nevertheless, based on trading characteristics of the shares themselves, not any factor intrinsic to the corporation or its assets. It is therefore prohibited.' " (*Id.*, citing *Borruso v Communications Telesystems Intl.*, 753 A2d 451, 460 [Del Ch 1999].)

However, Delaware courts permit discounts based on corporate illiquidity, that is, for liquidity risk when it comes to the sale of the entire company. (*Gearreald*, 2012 WL 1569818, *11, 2012 Del Ch LEXIS 91, *43.) However, as many have observed, the use of stock liquidity studies may not be an analytically sound method for calculating a DLOM. (*See* 2012 WL 1569818, *10, 2012 Del Ch LEXIS 91, *41-42; *Andaloro v PFPC Worldwide, Inc.*, 2005 WL 2045640, *16, 2005 Del Ch LEXIS 125, *69-70 [Aug. 19, 2005, C.A. Nos. 20336, 20289, Strine, V.C.]; *Agranoff v Miller*, 791 A2d 880, 896-897 [Del Ch 2001, Strine, V.C.].)

is cloaked with an air of financial professionalism. (*Cf. Agranoff*, 791 A2d at 896 ["Although valuation exercises are highly dependent on mathematics, the use of math should not obscure the necessarily more subjective exercise in judgment that a valuation exercise requires"].) To be sure, sound valuation principles ought to be and indeed were utilized in computing the Company's value (i.e., the court's adoption of most of Vannucci's valuation). Nonetheless, the gravamen of the court's valuation is *fairness*, a notion that is undefined, making it a classic question of fact for the court. Fairness, in this court's view, necessarily requires contextualizing the applicable valuation principles to the actual company being valued, as opposed to merely deciding a priori, and in a vacuum, that certain adjustments must be part of the court's calculus. From this perspective, the court reached its conclusion that an application of a DLOM here would be tantamount to the imposition of a minority discount. Consequently, the court finds it fairer to avoid applying a minority discount at all costs rather than ensuring that all hypothetical liquidity risks are accounted for.[5]

Accordingly, it is ordered that the parties' motion and cross motion for reargument are granted in part as follows: (1) the portions of the Decision regarding the applicable statute of limitations and total damages calculation are vacated and decided in accordance with the instant decision; (2) the court adheres to all other aspects of the Decision; and (3) judgment in this action shall only be entered after post-reference briefing is submitted in the manner described herein.

---

5. It should be noted that even if this court were required to apply a DLOM, the evidence submitted at trial does not justify a DLOM of 25% or higher. If it had applied a DLOM, the court would have applied a 10% DLOM. (*See Cortes*, 46 Misc 3d at 701 ["As no evidence was offered as to a discount specifically applicable to plaintiff's shares in this, apparently highly profitable, closely-held corporation, the (c)ourt will apply only a 10% discount for lack of marketability"], citing *Matter of Raskin v Walter Karl, Inc.*, 129 AD2d 642, 644 [2d Dept 1987] ["The companies' expert's proposed discount of 35% contains an element of discount for minority status and is excessive. A discount for lack of marketability of no more than 10% is appropriate in this case"]; *see also Agranoff*, 791 A2d at 896 n 40 [citing wide academic disagreement on proper marketability discount and "highly imprecise nature" of DLOM studies].)