Feldmeier v Feldmeier Equip., Inc. (2018 NY Slip Op 05893)





Feldmeier v Feldmeier Equip., Inc.


2018 NY Slip Op 05893


Decided on August 22, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CARNI, LINDLEY, AND WINSLOW, JJ.


773 CA 17-01930

[*1]JOHN B. FELDMEIER, PLAINTIFF-APPELLANT,
v
FELDMEIER EQUIPMENT, INC., HUNT LANE ASSOCIATES, LLC, ROBERT E. FELDMEIER, JEANNE C. JACKSON AND LISA F. CLARK, DEFENDANTS-RESPONDENTS. 






HARRIS BEACH PLLC, SYRACUSE (JULIAN B. MODESTI OF COUNSEL), FOR PLAINTIFF-APPELLANT.
BARCLAY DAMON LLP, SYRACUSE (JON P. DEVENDORF OF COUNSEL), FOR DEFENDANTS-RESPONDENTS. 


 Appeal from an order of the Supreme Court, Onondaga County (Donald A. Greenwood, J.), entered January 19, 2017. The order granted that part of the motion of defendants seeking summary judgment dismissing the complaint and denied the cross motion of plaintiff seeking, inter alia, reimbursement of certain expenses. 
It is hereby ORDERED that the order so appealed from is modified on the law by granting the cross motion in part and directing defendants to reimburse plaintiff for his reasonable attorneys' fees and litigation expenses related to defending against the counterclaims, and to advance an additional $75,000 to plaintiff for that purpose, directing that defendants Robert E. Feldmeier, Jeanne C. Jackson and Lisa F. Clark be restrained from using assets of defendant Feldmeier Equipment, Inc. to pay for any attorneys' fees and litigation expenses related to the defense against the dissolution cause of action and directing those individual defendants to reimburse defendant Feldmeier Equipment, Inc. for all amounts paid by it for that purpose, and as modified the order is affirmed without costs and the matter is remitted to Supreme Court, Onondaga County, for further proceedings in accordance with the following memorandum: Plaintiff, a former employee, officer, and director and a current minority shareholder of defendant Feldmeier Equipment, Inc. (Corporation), a closely held corporation, commenced this action in which he alleged that defendants Robert E. Feldmeier, Jeanne C. Jackson and Lisa F. Clark (collectively, individual defendants), who were officers and directors of the Corporation, had breached their fiduciary duties to plaintiff. As a result of their alleged "egregious breach of the fiduciary duties," plaintiff sought damages as well as common-law dissolution of the Corporation. Defendants answered the complaint with general denials and asserted counterclaims for, inter alia, unfair competition, misappropriation of trade secrets and breach of fiduciary duty.
Approximately three years after this action was commenced, defendants jointly moved for, inter alia, summary judgment dismissing the complaint. Plaintiff cross-moved for summary judgment seeking, inter alia, an order "directing that [the Corporation] be dissolved under the common law," an order advancing him certain amounts and reimbursing him for his expenses in defending against the counterclaims, and an order restraining the individual defendants from using the Corporation's funds "to pay for attorneys' fees and other professional service fees related to this action." Supreme Court granted defendants' motion and denied plaintiff's cross motion. We conclude that the court properly granted defendants' motion, but erred in denying those parts of plaintiff's cross motion seeking reimbursement and an advance of funds related to defending against the counterclaims and seeking to restrain the individual defendants from using the Corporation's funds to defend against dissolution of the Corporation.
As background, we note that the Corporation was founded in 1953 by Robert H. Feldmeier (father), who is the father of plaintiff and the individual defendants. Ultimately, plaintiff and the individual defendants became employees, officers and directors of the Corporation. The Corporation had only 50 shares and, as of 2008, the shares were distributed as follows: the father and Margaret Feldmeier (mother) held 13 shares each, and plaintiff and the individual defendants held 6 shares each. The father and mother thereafter formed defendant Hunt Lane Associates, LLC (Hunt) and, on December 28, 2010, they transferred their 26 shares to Hunt. The father and mother thereafter transferred their interests in Hunt to their children, equally, with each child owning 25%. Thus, as of January 3, 2011, each child owned 6 shares of the Corporation and each owned 25% of Hunt, which owned the remaining 26 shares of the Corporation.
Plaintiff became president of the Corporation in 1996, and he also subsequently became a manager of Hunt. The individual defendants took positions as the Corporation's vice-president, secretary and treasurer. In the spring of 2011, tensions erupted between plaintiff and the individual defendants, and plaintiff resigned from all of his positions in the Corporation and Hunt, thereby becoming a non-employee, minority shareholder. At that time, he was the only person to have that status. Following his resignation, plaintiff created a new company that directly competed with the Corporation. In addition, Jeanne Jackson transferred two of her shares to her daughter, nonparty Jennifer Jackson, and Lisa Clark retired.
It is undisputed that plaintiff did not receive any distributions or dividends from the Corporation after he resigned, which prompted him to commence this action. Plaintiff asserted causes of action for breach of fiduciary duty against the individual defendants, common-law dissolution of the Corporation, a constructive trust, and an accounting. For the most part, the viability of the latter three causes of action turns on whether there was any breach of fiduciary duty. With respect to the alleged breach of fiduciary duty, plaintiff contended that the individual defendants had failed to authorize a distribution of earnings, increased their combined salaries and bonuses, engaged in nepotism, retained excessive earnings, increased the Corporation's bad debts, increased loans to the Corporation's officers, and increased inventory, and that the individual defendants had taken those actions "to avoid making any dividend distribution to all shareholders, including Plaintiff."
Contrary to plaintiff's contention, we conclude that defendants met their initial burden on the motion with respect to the breach of fiduciary duty cause of action. To establish a cause of action for breach of fiduciary duty, plaintiff was required to establish " (1) the existence of a fiduciary relationship [or duty], (2) misconduct by [defendants], and (3) damages directly caused by [defendants'] misconduct' " (Matter of Lorie DeHimer Irrevocable Trust, 122 AD3d 1352, 1352 [4th Dept 2014]; see Deblinger v Sani-Pine Prods. Co., Inc., 107 AD3d 659, 660 [2d Dept 2013]; McGuire v Huntress [appeal No. 2], 83 AD3d 1418, 1420 [4th Dept 2011], lv denied 17 NY3d 712 [2011]). The individual defendants do not dispute that they owed plaintiff a fiduciary duty (see Deblinger, 107 AD3d at 660), but we agree with them that they established as a matter of law that they did not engage in any misconduct.
In his breach of fiduciary duty cause of action, plaintiff alleges that the individual defendants made certain facially-valid business decisions in bad faith and for the sole purpose of depriving him of distributions, either by reducing the net income available for distributions or by using income for their own compensation that instead could have been used for distributions. Thus, according to plaintiff, the "breach" is the failure to pay plaintiff dividends, and that breach is established by various acts of misconduct by defendants.
We conclude that defendants established that there was no misconduct and thus no breach of fiduciary duty by the individual defendants. Indeed, defendants established that dividends or distributions had never been paid to shareholders and that, instead, after bonuses were paid to certain non-owner employees of the Corporation and, at times, to the mother and father, the employee-officers were paid large bonuses. When the mother, father and nonparty Jennifer Jackson held shares of the Corporation, they did not receive bonuses commensurate with their shares of ownership. Moreover, after Hunt became the majority shareholder, it did not receive any money from the Corporation that could be considered a de facto or disguised dividend. Thus, defendants demonstrated that there was no misconduct by the individual defendants when they continued the established practice of paying bonuses to officers, who were also [*2]shareholders.
With respect to the other claimed "breaches" of fiduciary duty alleged in the complaint, defendants established that each action was a legitimate and good-faith business decision entitled to protection under the business judgment rule, "which provides that, where corporate officers or directors exercise unbiased judgment in determining that certain actions will promote the corporation's interests, courts will defer to those determinations if they were made in good faith" (Matter of Kenneth Cole Prods., Inc., Shareholder Litig., 27 NY3d 268, 274 [2016]; see Auerbach v Bennett, 47 NY2d 619, 629 [1979]). Significantly, defendants established that the individual defendants' overall compensation decreased following plaintiff's resignation and that, contrary to the allegations in the complaint, there were no loans made by the Corporation to the officers. Defendants also established that all of the family employees hired by the Corporation were qualified for their positions and that all but one were hired while plaintiff was president, thus defeating plaintiff's allegations of nepotism. With respect to the allegations that the Corporation retained excessive earnings and had increased inventory, defendants established that both were due to the significant increase in the volume of business after plaintiff's resignation. Finally, with respect to plaintiff's allegations that the Corporation incurred bad debts, defendants established that the debt arose from projects that were commenced during plaintiff's tenure and that it was successfully addressed.
In opposition to the motion, plaintiff contended that summary judgment was premature because certain discovery requests were still outstanding. We agree with defendants that plaintiff failed to "show that the discovery sought would produce evidence sufficient to defeat the motion . . . , and that facts essential to oppose the motion were in [the movant's] exclusive knowledge and possession and could be obtained by discovery" (Resetarits Constr. Corp. v Elizabeth Pierce Olmsted, M.D. Center for the Visually Impaired [appeal No. 2], 118 AD3d 1454, 1456 [4th Dept 2014] [internal quotation marks omitted]; see generally CPLR 3212 [f]). With respect to the merits of the motion and cross motion, plaintiff contended that the business judgment rule did not apply because the decisions of the individual defendants were made in bad faith. We conclude, however, that plaintiff's "conclusory and speculative allegations of bad faith, self-dealing, and other wrongdoing [are] not sufficient to raise a triable issue of fact" or to warrant summary judgment in his favor (Bay Crest Assn., Inc. v Paar, 72 AD3d 713, 714 [2d Dept 2010]).
Plaintiff further contended that the individual defendants acted in bad faith and engaged in misconduct by failing to change the method of distributing profits after plaintiff's resignation. In his affidavit, which was submitted in opposition to defendants' motion and in support of his cross motion, plaintiff averred that, while he was president, the Corporation had used bonuses as "disguised" or "de facto" dividends, which was fair when all shareholders were employees but was oppressive to him once he resigned and no longer received bonuses. As noted above, however, plaintiff's contention lacks merit inasmuch as other non-employee or non-officer shareholders were either never paid bonuses or received bonuses that were not commensurate with their representative shares of ownership.
In addition to allegations in the complaint, plaintiff raised new allegations of defendants' misconduct, i.e., failing to hold annual meetings, paying Lisa Clark for good will and a covenant not to compete upon her retirement, creating a profit sharing plan with employees, increasing customer deposits and improperly making loan repayments to the individual defendants. Even assuming, arguendo, that we may consider those allegations of misconduct despite the fact that they were raised for the first time in opposition to defendants' motion for summary judgment (see generally DiFabio v Jordan, 113 AD3d 1109, 1110-1111 [4th Dept 2014]), we conclude that plaintiff failed to raise a triable issue of fact whether those corporate decisions constituted a breach of fiduciary duty or were otherwise made in bad faith.
Plaintiff submitted the affidavit of an expert who opined that the compensation paid to the individual defendants, although significantly less than when plaintiff was president, was excessive and constituted de facto dividends that should have been distributed to shareholders. The expert further opined that the payments to Lisa Clark for her "so-called goodwill' " and her covenant not to compete were "highly unusual," and that the individual defendants made those payments to divert assets in an effort to depress the value of plaintiff's shares. With respect to the remaining actions that were challenged by plaintiff, the expert opined that the profit sharing [*3]plan, retained earnings, customer deposits and increased inventory reduced income available for distribution and were made without "any reasonable explanation." In our view, plaintiff failed to raise any issue of fact to refute defendants' evidence that the individual defendants' decisions on compensation were the "product of valid business judgment" (Marx v Akers, 88 NY2d 189, 204 [1996]; cf. Deblinger, 107 AD3d at 661-662). Plaintiff's expert provided only
" conclusory allegations of wrongdoing,' " which are insufficient to raise a triable issue of fact or otherwise justify judgment in plaintiff's favor (Marx, 88 NY2d at 202).
Assuming, as does our dissenting colleague, that plaintiff raised material issues of fact by submitting that expert affidavit, we nevertheless conclude that defendants, in reply, "conclusively refute[d]" the bases of the expert's opinion (First Franklin Fin. Corp. v Beniaminov, 144 AD3d 975, 977 [2d Dept 2016]; see Anderson v Beth Israel Med. Ctr., 31 AD3d 284, 288 [1st Dept 2006]; Trojahn v O'Neill, 5 AD3d 472, 473 [2d Dept 2004]; cf. Kalt v Ritman, 21 AD3d 321, 323 [1st Dept 2005]). In reply, defendants submitted evidence, including an expert affidavit, that provided the very explanations that plaintiff's expert contended were lacking and refuted the factual underpinnings for the opinions of plaintiff's expert. We thus conclude that the court properly granted that part of defendants' motion with respect to the breach of fiduciary duty cause of action.
Based on the foregoing, we further conclude that the court properly granted that part of defendants' motion with respect to the common-law dissolution cause of action. As plaintiff correctly recognized, he could not seek judicial dissolution under Business Corporation Law § 1104-a because he owned less than 20% of all outstanding shares of the Corporation. Nevertheless, he could seek common-law dissolution. "Predicated on the majority shareholders' fiduciary obligation to treat all shareholders fairly and equally, to preserve corporate assets, and to fulfill their responsibilities of corporate management with scrupulous good faith, the courts' equitable power [to dissolve a corporation] can be invoked when it appears that the directors and majority shareholders have so palpably breached the fiduciary duty they owe to the minority shareholders that they are disqualified from exercising the exclusive discretion and the dissolution power given to them by statute" (Matter of Kemp & Beatley [Gardstein], 64 NY2d 63, 69-70 [1984] [internal quotation marks omitted]; see Fedele v Seybert, 250 AD2d 519, 521 [1st Dept 1998]). Despite the different standards for statutory and common-law dissolution, courts have permitted common-law dissolution actions to proceed where there are colorable claims of oppression and looting, which are grounds for statutory dissolution under section 1104-a (1) and (2). Oppression occurs "when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the [minority shareholder's] decision to join the venture" (Kemp & Beatly, 64 NY2d at 73; see Matter of Charleston Sq., 295 AD2d 425, 426 [2d Dept 2002]). Plaintiff contends that, in addition to breaching their fiduciary duty, the individual defendants engaged in looting by awarding themselves excessive compensation, which had the effect of oppressing him and depriving him of a fair return on his stock in the Corporation. As noted above, we conclude that defendants established as a matter of law that there were no breaches of fiduciary duty. We further conclude that defendants established as a matter of law that the majority shareholders did not oppress plaintiff or otherwise "effect an unlawful diversion of large portions of [the Corporation's] earnings" to benefit themselves (Leibert v Clapp, 13 NY2d 313, 317 [1963]). To establish the waste of corporate assets based upon excessive compensation, " [t]he objecting stockholder must demonstrate that no person of ordinary sound business judgment would say that the corporation received [a] fair benefit. If ordinary businessmen might differ on the sufficiency of consideration received by the corporation, the courts will uphold the transaction' . . . This inquiry turns on whether there is a great disparity in values between the assets expended and the benefits received' . . . In other words, the shareholder must prove that the challenged compensation bore no relationship to the value received by the company, rendering it unjustifiably excessive" (Zelouf Intl. Corp. v Zelouf, 45 Misc 3d 1205[A], 2014 NY Slip Op 51462[U], *10 [Sup Ct, NY County 2014], rearg granted on other grounds 47 Misc 3d 346 [Sup Ct, NY County 2014], quoting Aronoff v Albanese, 85 AD2d 3, 5-6 [2d Dept 1982]). Here, as noted, the individual defendants were paid less after plaintiff resigned and the money was, instead, reinvested in the Corporation, which grew substantially. We therefore conclude that defendants met their initial burden on the motion with respect to the common-law dissolution cause of action, and plaintiff failed to raise a triable issue of fact (see Kruger v Gerth, 22 AD2d 916, 917 [2d Dept 1964], affd 16 NY2d 802 [1965]). Contrary to plaintiff's contention, this is not a situation where the compensation policy was changed after the minority shareholder left the [*4]employ of the Corporation (cf. Kemp & Beatly, 64 NY2d at 74). Indeed, it is plaintiff who seeks to change the established compensation policy of the Corporation.
Inasmuch as plaintiff's substantive causes of action for breach of fiduciary duty and dissolution were properly dismissed, we conclude that the court properly granted those parts of defendants' motion with respect to the constructive trust and accounting causes of action (see generally Potter v Davie, 275 AD2d 961, 963 [4th Dept 2000]; Adam v Cutner & Rathkopf, 238 AD2d 234, 241 [1st Dept 1997]), and properly determined that plaintiff had no legal right to a buyout of his minority shares (cf. Business Corporation Law § 1118 [a]).
We agree with plaintiff, however, that the court erred in denying that part of his cross motion seeking reimbursement and an advance of money for expenses related to defending against the counterclaims. The counterclaims are asserted against plaintiff "by reason of the fact that he . . . was a director or officer of the [C]orporation," and Business Corporation Law § 722 (a) provides that he may be indemnified by the Corporation for his "reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of such action or proceeding . . . if [he] acted, in good faith, for a purpose which he reasonably believed to be in . . . the best interests of the [C]orporation." That is so even though the counterclaims are brought, in part, by the Corporation itself (see Sequa Corp. v Gelmin, 828 F Supp 203, 205-207 [SD NY 1993]; Schlossberg v Schwartz, 43 Misc 3d 1224[A], *12 [Sup Ct, Nassau County 2014]; cf. Brittania 54 Hotel Corp. v Freid, 251 AD2d 49, 50 [1st Dept 1998]). Pursuant to section 724 (c), where, as here, "indemnification is sought by judicial action, the court may allow a person such reasonable expenses, including attorneys' fees, during the pendency of the litigation as are necessary in connection with his [or her] defense therein, if the court shall find that the [person seeking indemnification] has by his [or her] pleadings or during the course of the litigation raised genuine issues of fact or law." "With respect to the advancement of fees, courts have consistently observed that the governing standard is not a stringent one' " (Kaloyeros v Forst Schulyer Mgt. Corp., 157 AD3d 1152, 1153 [3d Dept 2018]). All plaintiff was required to do was raise a genuine issue of fact or law (see id. at 1154; 136 E. 56th St. Owners v Darnet Realty Assoc., 248 AD2d 327, 328 [1st Dept 1998]), and we conclude that he has done so. We thus modify the order accordingly, and we remit the matter to Supreme Court for a determination of reasonable attorneys' fees and litigation expenses that should be reimbursed to plaintiff, subject to repayment in the event defendants are successful on their counterclaims (see 136 E. 56th St. Owners, 248 AD2d at 328).
Finally, we further conclude that the court erred in denying that part of plaintiff's cross motion seeking to restrain the individual defendants from using the Corporation's funds to pay for any expenses related to defending against the dissolution cause of action and seeking reimbursement for the Corporation of any such amounts paid since the inception of this action (see Matter of Boucher v Carriage House Realty Corp., 105 AD3d 951, 952 [2d Dept 2013]; Matter of Penepent Corp. [appeal No. 11], 198 AD2d 782, 783 [4th Dept 1993], lv denied 83 NY2d 797 [1994]). Although the cited cases involve actions for judicial dissolution under Business Corporation Law § 1104-a, the underlying premise for determining that a corporation and its shareholders are precluded from using corporate funds to defend against a dissolution is that a corporation lacks standing to litigate the issue of its own dissolution (see generally Matter of Clemente Bros., 19 AD2d 568, 568 [3d Dept 1963], affd 13 NY2d 963 [1963]). Here, as in judicial dissolution proceedings, "the corporation appears as a nominal party and the proceeding amounts to a dispute between the shareholders" (Matter of Public Relations Aids, 109 AD2d 502, 511 [1st Dept 1985]). We thus conclude that "corporate funds may not be used in payment of counsel fees for the individual shareholders" regardless of the fact that this is a common-law dissolution proceeding (id.; see Matter of Reinschreiber [Lipp], 70 AD2d 596, 596 [2d Dept 1979], lv denied 48 NY2d 603 [1979]; Matter of Cantelmo [Brewer-Cantelmo Co., Inc.Daru, Vischi & Winter], 278 App Div 800, 801 [1951]). We thus further modify the order accordingly, and we remit the matter to Supreme Court for a determination of the attorneys' fees and litigation expenses that should be reimbursed to the Corporation.
All concur except Carni, J., who dissents and votes to further modify the order in accordance with the following memorandum: I respectfully dissent in part. Even assuming, arguendo, that defendants met the initial burden on their summary judgment motion with respect to the breach of fiduciary duty cause of action, I conclude that plaintiff raised issues of fact in opposition by submitting the affidavit of a certified public accountant with expertise in forensic [*5]financial examination of, inter alia, manufacturing businesses. The affidavit of defendants' expert submitted in reply merely created credibility questions to be resolved at trial. In granting defendants' motion, I submit that Supreme Court improperly engaged in issue determination, not issue finding (see generally Goldstein v County of Monroe, 77 AD2d 232, 236 [4th Dept 1980]).
Thus, in addition to the modifications to the order made by the majority, I would modify the order by denying that part of defendants' motion with respect to the breach of fiduciary duty cause of action. Inasmuch as the common-law dissolution, constructive trust and accounting causes of action all rely upon a breach of fiduciary duty as an essential element, I would further modify the order by denying those parts of defendants' motion with respect to those causes of action and reinstating the complaint in its entirety.
Entered: August 22, 2018
Mark W. Bennett
Clerk of the Court